813 So.2d 467 (2002)
Gloria B. MARTELLO
v.
CITY OF FERRIDAY and Owen and White, Inc.
No. 01-1240.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
Rehearing Denied May 1, 2002.
*471 Charles S. Norris, Jr., Vidalia, LA, Attorney for the Class of Plaintiffs/Appellees Gloria Martello, Class Representative.
Steven B. Murray, Linda S. Harang, Julie A. Jacobs, New Orleans, LA, Attorneys for the Class of Plaintiffs/Appellees Gloria Martello, Class Representative.
Stacy C. Auzenne, Alexandria, LA, Attorney for the Defendant/Appellant the Town of Ferriday.
Robert E. Kerrigan, Joseph L. McReynolds, Lisa C. Winters, New Orleans, LA, Attorney for the Defendant/Appellant U.S. Filter Wastewater Group, Inc.
John P. Wolff, III, Stephen R. Wilson, Nancy B. Gilbert, Baton Rouge, LA, Attorney for the Defendant/Appellant Owen & White, Inc.
Court composed of NED E. DOUCET, Jr., Chief Judge, BILLIE COLOMBARO WOODARD, and ELIZABETH A. PICKETT, Judges.
DOUCET, Chief Judge.
The Defendants, the Town of Ferriday (the Town), Owen & White, Inc. (0 & W) and U.S. Filter Wastewater Group, Inc. (U.S. Filter), appeal the trial court's decision to certify this matter as a class action.
The following undisputed facts, have been taken from the trial court's reasons for judgment, although reordered for purposes of this opinion:
At all relevant times, The Town of Ferriday supplied potable water to the residences and business of Ferriday and the adjacent unincorporated areas, including Red Gum and Lake St. John, and billed its water customers monthly for the water they used.
The Town of Ferriday contracted with the Baton Rouge engineering firm of *472 Owen & White, Inc., in October 1978 for the purpose of designing a new water treatment plant for the Town of Ferriday, and for the adjacent communities that are supplied by the Town's water treatment plant.
. . . .
Owen & White recommended that the Town of Ferriday build a new water treatment plant, and the Town accepted the recommendation.
. . . .
Owen & White recommended the use of Old River, also called Marengo Bend, as the source of the raw water for the new water treatment plant, and the Town of Ferriday accepted the recommendation.
. . . .
In the Fall of 1982, Owen & White ... recommended that the Town of Ferriday consider using, as the primary filtration component of its new water treatment plant, a packaged water treatment plant designed and manufactured by Neptune Microfloc (the corporate predecessor in interest to defendant USFilter Waste Water Group, Inc.).
. . . .
Based on the outcome of [a] "pilot water plant" study [conducted using the Neptune Microfloc equipment], Owen & White recommended that the Town of Ferriday accept its design for the new water treatment plant incorporating the Neptune Microfloc packaged water treatment plant, and the Town accepted the recommendation.
The new water treatment plant was constructed and began operating in December 1988. Since that time, it has been the only water treatment plant that supplies potable water to the residences and business of the Town of Ferriday and the adjacent unincorporated areas, including Red Gum and Lake St. John.
. . . .
Within six (6) months after the new water treatment plant began operating, the Ferriday water customers complained about the quality of the water being produced by the new plant.
The source of the customers' complaints was determined to be an excessively high level of manganese in the raw water of Marengo Bend.
The excessively high level of manganese in the water in Marengo Bend was not reported by Neptune Microfloc in its summary of the May 1983 "pilot water plant" study.
. . . .
In August 1999, the Louisiana State Department of Health and Hospitals issued first "Boil Water Advisory" and several days later a "Boil Water Notice" for everyone who received their potable water form the Town of Ferriday's water treatment plant.
No one was excluded from the "Boil Water Advisory" or from the "Boil Water Notice". All residences and businesses that were supplied by the Town of Ferriday's water treatment plant were included.
The ... "Boil Water Advisory" and "Notice" instructed everyone using the Town of Ferriday's water supply that before they could use the Town's water for drinking, cooking, washing hands, or bathing, it first had to be brought to a "rolling" boil for at least 5 minutes.
. . . .
The "Boil Water Notice" was lifted on... December 22, 1999, for all residences and businesses that were supplied by the Town of Ferriday's water treatment plant.
During the approximately four (4) months that the Ferriday water customers were under the "Boil Water Notice", *473 the National Guard supplied potable water to the Town of Ferriday in tanker trucks. Residents could draw water from the trucks into jars, jugs, bottles, buckets, or any other type of container.
. . . .
In August 1999, just one (1) or two (2) days before the "Boil Water Advisory" was issued, the Ferriday water plant experienced a complete shut down, leaving all Ferriday Water customers without any water for three (3) days.
As a result of the water problems, Gloria Martello filed a "Petition for Damages and For Class Certification," seeking to have the matter certified as a class action to be pursued on behalf of:
All persons or entities who are customers of, who are served by, and/or who otherwise are or were dependent on the City of Ferriday for their water supply, and who claim that they suffered damage or loss as a result of the failure of the Ferriday Water Plant that began on or about August 20, 1999.
After a hearing, the trial court granted the Plaintiff's motion for class certification and overruled the Town's exception of no cause of action. In connection with this ruling, the court issued twenty-four pages of written reasons for judgment. The Defendants, the Town, O & W and U.S. Filter, appeal the trial court's ruling.

NO CAUSE/NO RIGHT OF ACTION
The Town asserts as error that the trial court erred in failing "to rule on the Town's Exception of No Right and No Cause of Action before certifying a class pursuant to Graf v. Town of St. Gabriel." Further, the Town, on the date of oral arguments herein, filed exceptions of no cause or right in this court.
We first note that the Town, as evidenced by the transcript and admitted in its brief on appeal, agreed to convert its exception of no right of action to an exception of no cause of action. Therefore, we cannot say that the trial court erred in failing to consider the exception of no right of action. The court did rule on the exception of no cause of action and, in fact, denied that motion in the same judgment in which it granted class certification.
We note that the case of Graf v. Town of St. Gabriel, 97-2022 (La.App. 1 Cir. 11/6/98); 744 So.2d 1, writ denied, 99-633 (La.4/23/99); 742 So.2d 888 does not stand for the principle that all exceptions must be heard prior to class certification. Rather, in Graf the court required that a challenge to class certification and maintenance of the matter as a class action be heard prior to hearing the case on the merits. We find no error on the part of the trial court in this case in hearing the exception at the class certification hearing.
An exception of no cause of action questions the legal sufficiency of the pleadings. Steed v. St. Paul's United Methodist Church, 31,521, 31,522 (La.App. 2 Cir. 2/24/99); 728 So.2d 931, writ denied, 99-877 (La.5/7/99); 740 So.2d 1290. "On review, dismissal for no cause of action should only be sustained if well-pleaded allegations of fact in the petition clearly show that, based on circumstances alleged, there is no remedy under any theory of law." Lewis v. 38th Judicial Dist. Court, 00-1204, 00-878, p. 2 (La.App. 3 Cir. 12/6/00); 795 So.2d 347, 349, writ denied, 00-1898, 00-2401 (La.8/24/01); 795 So.2d 319, 795 So.2d 320. After reviewing the pleadings filed by the Plaintiff herein, we find that the pleadings adequately state a cause of action for damages as well as the requirements for a class action. Therefore, we find that the trial court correctly overruled the exception of no cause of action. We further overrule the exception of no cause of action filed in this court.

*474 DISCRETIONARY ACT IMMUNITY
The Town further asserts that the trial court should have dismissed Plaintiff's suit because the town is immune from strict liability for its discretionary acts under La.R.S. 9:2798.1. The Town reasserts this in its exception of no right of action filed in this court. The Town did plead this defense in its answer to the Plaintiff's petition. However, we find nothing of record which would lead us to believe that this defense was before the court at the hearing on the class certification. Nothing in the Town's exception or argument is applicable to this defense. Finding that the question of discretionary act immunity was not before the trial court, we decline to consider it on appeal. The record does not contain sufficient evidence to allow us to rule on this defense. We find that this defense goes to the merits of the case and does not affect the propriety of the class certification.

U.S. FILTER PROFFER EVIDENCE
The Town assigned as error the trial court's refusal to allow U.S. Filter to proffer certain evidence, apparently an agreement between the town's former attorney and O & W. The Town did not object to this ruling. Therefore, we would not normally review the Town's assignment in this regard. However, since U.S. Filter adopted the assignments of error and arguments of the Town we will review this assignment.
After reviewing the record however, we find we need not reach the question of whether the court was proper in refusing to accept the proffer, since we find that the evidence was properly excluded. The trial court ordered the parties to exchange witness and exhibit lists by January 2, 2002. The order specifically required that:
Exhibit lists and/or any other evidence that any party intends to introduce during the certification hearing must be disclosed and presented to the opposing parties (unless already produced in discovery) by January 2, 2001. Exhibits or documents already produced in discovery must be listed by adequate description and/or by their Bates-stamped number. Copies of demonstrative exhibits that may be used at the hearing also must be produced.
Exhibits and lists were filed by all parties. This agreement was not specifically listed in any exhibit list, although the Town purported to list as exhibits anything produced by or in the possession of any other party, without any more specific identification as required by the trial court's order.
The theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of cases. The trial court is vested with much discretion in determining when a pretrial order should be modified. However, that discretion is necessarily controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their case accordingly. Day v. South Line Equipment Company, 551 So.2d 774, 779-780 (La.App. 1st Cir.), writ denied, 553 So.2d 474 (La.1989).
Theriot v. State Dept. of Wildlife & Fisheries, 94-1536, p. 5 (La.App. 1 Cir. 4/7/95); 661 So.2d 986, 989, writ denied, 95-1617 (La.10/6/95); 662 So.2d 1041.
We find no error in the trial court's decision to exclude from evidence a document not found on any exhibit list.

JUDICIAL BIAS
The Defendants assert that the trial court's ruling in this matter should be set aside because the trial judge was biased *475 in favor of the Plaintiff. The trial judge did recuse herself after certifying the class because her bailiff is a potential class member. However, the Defendants, in spite of citing several pre-hearing incidents which allegedly support the finding that the trial judge was biased, did not file a written motion to recuse prior to the hearing or prior to the rendition of judgment herein. Accordingly, we will not consider this assignment of error. Woodland Ridge Ass'n v. Cangelosi, 94-2604 (La. App. 1 Cir. 10/6/95); 671 So.2d 508, 512.

EXPANSION OF THE PLEADINGS
The Defendants/Appellants argue that the Plaintiff limited her claim for class certification to a "limited fund" theory under La.Code Civ.P. art. 591(B)(1)(b) and that the trial court therefore erred in allowing the Plaintiff to expand the pleadings to argue for certification under La. Code Civ.P. art. 591(B)(3) in that common issues of liability and fault predominate over individual claims. After reviewing the record, we find that Plaintiff's original and amending petitions sufficiently plead commonality and predominance. Even if the petitions did not so plead, the Defendants/Appellants made no objection to the introduction of evidence tending to support the finding that common issues of liability of fault predominate over individual claims.
Unobjected to evidence of issues not contained in the pleadings, which is admitted at trial, serves to enlarge the pleadings. Such evidence is "treated in all respects as if [it] had been raised by the pleading[s]." La.Code Civ.Proc. art. 1154; See also, First National Bank of Abbeville v. Greene, 612 So.2d 759 (La. App. 3d Cir.1992) and Herrell v. Herrell, 594 So.2d 943 (La.App. 3d Cir.1992).
Hopkins v. American Cyanamid Co., 95-1088 (La.1/16/96); 666 So.2d 615, 623. Therefore, the trial judge did not err in certifying the class action based on commonality and predominance rather than on a limited fund theory.

EXPERT LEGAL TESTIMONY
Defendants/Appellants argue that since the trial court allowed expansion of the pleadings to allow evidence that common issues of liability and fault predominate over individual claims, the court should have allowed the testimony of its expert on class certification, Ben Hanchey, an attorney. The Plaintiff objected to Hanchey being used as an expert witness prior to the hearing on class certification. The court ruled that Hanchey would not be allowed to testify and this court denied the Defendants' application for writs in this regard.
After reviewing the record, and Hanchey's deposition which was proffered by the Defendants/Appellants, we find that Hanchey's testimony consists of "legal opinions and conclusions of law." Wilson v. Wilson, 542 So.2d 568, 573 (La. App. 1 Cir.1989). His testimony contains nothing which could not be more properly presented to the court via argument or memoranda.
The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Clesi, Inc. v. Quaglino, 137 So.2d 500 (La. App. 4th Cir.1962). The domestic law testimony of an expert is not proper, as distinguished from foreign law testimony, on the theory that the court itself is the expert on domestic law.
Id.
Accordingly, we find no error in the trial court's decision to exclude Hanchey's testimony.

*476 CLASS CERTIFICATION
The various Defendants/Appellants argue that the trial court erred in certifying the class because the Plaintiff failed to establish numerosity and typicality, because individual issues predominate over class issues.
Louisiana Code of Civil Procedure Articles 591 and 592 describe the requirements for a class action:
(1) A class so numerous that joinder is not practical;
(2) The joinder of at least one member of the class who is able to provide adequate representation for the absent members; and
(3) A common character among the rights of the representative and the absent class members.

Pellerin v. Louisiana Health Serv. & Indem. Co., 460 So.2d 93 (La.App. 3 Cir.1984). There is no set number of participants needed to satisfy the "numerosity" requirement. Ducote v. City of Alexandria, 95-1197 (La.App. 3 Cir. 3/6/96); 670 So.2d 1378. Courts examine the facts and circumstances of each case to determine whether the class is so numerous that it makes joinder impracticable. Id. The trial court found that the persons constituting the class were too numerous to be joined since there were at least 114 potential class members in Natchitoches Parish alone and that Schwab stipulated to the same. This large number of potential class members surely produces too many plaintiffs to join in a manner conducive to judicial economy.
The requirement of "adequate representation" is satisfied when the claims of the class representatives are typical or a cross section of the claims of all of the members in the class. Dumas, 635 So.2d 446. The trial court found that Robert C. Thomas and Robert M. Kahn were adequate class representatives because their claims were typical of those of all class members. Since their claims are consistent with those of the overall class, Mr. Thomas and Dr. Kahn will provide fair and adequate representation for all of the class members.
The "common character" requirement only allows class actions to be certified in cases where it would achieve economy of time, effort, expense, and provide for uniform outcomes for similarly situated plaintiffs. McCastle v. Rollins Envtl. Services, 456 So.2d 612, 616 (La.1984). The district court found no material difference between the claims of the class representatives and those of the absent class members. It noted the absence of differences which would prevent class certification and stated the court would consider the use of case management techniques to handle any material differences which may later arise. Given the evidence provided at this time, creating a class of individuals who have similar rights will achieve more efficient outcomes than allowing separate actions to proceed.
A trial court has broad discretion to certify a class through its analysis of the facts and circumstances before it. Ducote v. City of Alexandria, 670 So.2d 1378. The trial court's decision cannot be overturned absent manifest error. Spitzfaden[ v. Dow Corning Corp.], 619 So.2d 795[ (La.App. 4 Cir.1993)]. Until the decision on the merits is rendered, the court may alter or amend its decision to certify a class. La.Code Civ.P. art. 593.1(B). Based on the evidence that is currently in the record, the trial court did not abuse its broad discretion to certify the class.
Thomas v. Charles Schwab & Co., Inc., 95-1405, pp. 6-8 (La.App. 3 Cir. 9/25/96); 683 So.2d 734, 738-39, writ denied, 97-0009, *477 96-2579 (La.1/24/97); 686 So.2d 859; 686 So.2d 858.
In this case the trial court adequately explained her reasons for certifying the class, in extensive reasons for judgment, pertinent parts of which have been attached hereto as an appendix (footnotes omitted). After reviewing these reasons, and the record upon which they are based, we find her analysis of the facts and circumstance to be correct. Finding no manifest error, we affirm the decision of the trial court to certify the class as laid out in her reasons for judgment.

CONCLUSION
For these reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed equally to the Defendants/Appellants.
AFFIRMED.

APPENDIX

Conclusions of Law

1. Numerosity
The testimony from Water Plant Superintendent William McKeel and former Mayor Odeal Montgomery establishes that at all relevant times there were approximately 4,500 residents in the Town of Ferriday who received the water at their homes and businesses from the Town of Ferriday's water treatment plant. Additionally, there are residents of the adjacent areas of Red Gum (such as Mildred McKinney) and Lake St. John who receive their water from the Town of Ferriday's water treatment plant. This number of persons, who claim that they were similarly affected by the 1999 water plant failure and the "Boil Water Notice" is sufficient to satisfy the "numerosity" requirement. La. C.C.P. art. 591(A)(1).
A class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton v. Gaylord Container, 96-1958 at 14 (La.App. 1st Cir.3/37/97); 691 So.2d 760, 769, writs denied, 970800 and 0830 (La.4/8/97); 693 So.2d 147. Our courts and our laws do not require a minimum number of persons, nor do they set a maximum number. The determination of whether this requirement has been fulfilled depends on the facts and circumstances of each individual case. Cotton, supra, 96-1958 at 14, 691 So.2d at 768; Dumas v. Angus Chemical Co., 25,632 at 6-7 (La.App.2d Cir.3/30/94); 635 So.2d 446, 450.
The Court finds that the testimony establishes that the facts and circumstances of this case, and the number of persons and businesses (at least 4,500) who claim that they were similarly affected by the Town of Ferriday's water problems in 1999, therefore, is sufficient to satisfy the "numerosity" requirement. La. C.C.P. art. 591(A)(1).

2. Commonality
The Court heard testimony from witnesses whose homes are supplied by the Town of Ferriday's water treatment plant (Gloria Martello, Christine Roberts, Mildred McKinney), or whose businesses are supplied by the Town of Ferriday's water treatment plant (Gloria Martello, Shelby Guidry, Tommy Massey), or who work at a business supplied by the Town of Ferriday's water treatment plant (Gloria Martello, Shelby Guidry, Tommy Massey, Mildred McKinney).
All of these witnesses testified about the problems and complaints they had with the water produced by the Town of Ferriday's *478 water treatment plant, and with the problems they claim they experienced during the four (4) months of the "Boil Water Notice". The witnesses testified about the problems they had with cooking, drinking, bathing, and doing laundry. Odeal Montgomery (who was the Mayor when the Town was placed under the "Boil Water Notice" in August 1999), described these four (4) months as "perilous times". The Court finds all of these witnesses to be credible and forthright in their testimony.
At this time, the Court is not asked to decide whether these claims are accurate, valid, or compensable. Nor is the Court asked at this time to decide who or what caused or contributed to any of the Town of Ferriday's water problems, the August 1999 "shut down", or the August December 1999 "Boil Water Notice". At this time, the Court is only required to determine whether these claims have a common character such that they satisfy the statutory requirement of "commonality". La. C.C.P. art. 591(A)(2).
All of the witnesses described having the same types of problems during the "Boil Water Notice". They testified about the same types of inconvenience, the same types of worries, the same type of stress, the same types of non-reimbursed personal expenses, and the same types of non reimbursed business expenses.
Mr. Michael Cazes, an official with the Regional Office of the Louisiana State Department of Health and Hospitals, testified that the "Boil Water Notice" started on the same day for everyone, ended on the same day for everyone, and that everyone was under the same set of instructions about using the water for the entire period of time that the "Boil Water Notice" was in effect. Mr. Cazes testified that even though the water treatment plant was capable of producing water after the initial 3-day "shut down" the water was not potable (drinkable without first boiling it) until December 22, 1999, when the State lifted the "Boil Water Notice".
Based on all of this testimony, the Court finds that the only differences between the claims of these witnesses are differences of degree and amount. The nature of their claims is so similar as to be almost identical. In addition to the common nature of the witnesses' claims, their testimony satisfies the Court that the claims about their water problems originate from the same common source-the Town of Ferriday's water treatment plant. Therefore, if any defendant is found to be liable to just one Class member due to that defendant's role in causing or contributing to the Class member's water-related complaints, then the finding of liability should be binding on that defendant as to all the other similarly situated Class members, without the need for every other Class member to have a trial on those same issues.
The Court understands and recognizes that there will be differences in the Class members' claims in the degree and amount of damages they seek, but the nature of their claims is common to the entire Class. Some may only have claims for lost personal expenses, whereas some may only have claims for lost business expenses, but the Court considers these to be differences of degree or amount. These individual differences in the exact type or amount of damages do not preclude or defeat class certification. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 616 (La. 1984); Livingston Parish Police Jury v. Acadiana Shipyards, 598 So.2d 1177, 1183 (La.App. 1st Cir.), writ denied, 605 So.2d 1122 (La.1992); Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-494 (La.11/12/99); 759 So.2d 755. It has been established that the existence of issues *479 particular to individual members of the class does not defeat commonality. McCastle, supra, 456 So.2d at 620.
The Court finds that the claims of the Class members have a sufficient common character and are derived from a common source. Their claims against the defendants are directed at the common nature of the defendants' conduct. The Court finds, therefore, that the "commonality" requirement is satisfied in this case. La. C.C.P. art. 591(A)(2),

3. Typicality
The "typicality" criteria is a relatively new statutory requirement for certification. Louisiana state courts, however, judicially adopted this requirement years ago, so it is not new to Louisiana class action jurisprudence. See e.g. Adams v. CSX Railroads, 615 So.2d 476, 482 (La. App. 4th Cir.1993); Dumas v. Angus Chemical Co., 25,632 at 6 (La.App.2d Cir.3/30/94); 635 So.2d 446, 450.
This criteria combines elements of commonality and adequacy by requiring that the Class Representatives assert claims that are typical or a cross-section of those asserted or raised by the rest of the members of the Class. This criteria also includes a consideration of the Class Representatives' claims to determine whether any are adverse to or substantially different in general type from those asserted by the rest of the Class.
In every class action, except those primarily seeking injunctive relief, there are almost always differences between and among members of the Class in the amount and degree of damages each claims to have suffered. But these differences in degree or amount are not typicality factors. Typicality is only concerned with the types of claims being asserted, not with the degree or amount of damages being requested. See Billieson v. City of New Orleans, 98-1232 at 17 (La.App. 4th Cir. 3/3/99); 729 So.2d 146, 157, writ denied, 99-0946 (La.10/29/99); 749 So.2d 644.
Each of the Class Representatives testified about the type and nature of their claims:
Mrs. Martello testified that she experienced mental and emotional distress and stress; non-reimbursed business expenses; loss of business income; annoyance, discomfort, and inconvenience. Mr. Massey testified that he experienced mental and emotional distress and stress; non-reimbursed business and personal expenses; and annoyance, discomfort, and inconvenience. Mrs. Guidry testified that she experienced mental and emotional distress and stress; non-reimbursed business expenses; loss of business income; annoyance, discomfort, and inconvenience; and property damage. Mrs. Roberts testified that she experienced mental and emotional distress and stress; non-reimbursed personal expenses; annoyance, discomfort, and inconvenience. Mrs. McKinney testified that she experienced mental and emotional distress and stress; non-reimbursed personal expenses; annoyance, discomfort, and inconvenience; and fear of disease or illness for her family.
Each of the Class Representatives also testified about their residential or business relationship with the Town of Ferriday during the "Boil Water Notice":
Mrs. Martello testified that she lives in the Town, owns and operates a business in the Town, works in the Town, and owns property in the Town. The water to her home and her business is supplied by the Town of Ferriday water treatment plant. Mrs. Guidry testified that she owns and operates a business and property in the Town and works in the Town. The water to *480 her business is supplied by the Town of Ferriday water treatment plant. Mr. Massey testified that he operates a business in the Town and works in the Town. The water to the business he operates is supplied by the Town of Ferriday water treatment plant. Mrs. Roberts lived in the Town and still owns property in the Town. The water to her home in Ferriday is supplied by the Town of Ferriday water treatment plant. Mrs. McKinney lives and owns property in the Red Gum area of Ferriday, and works in the Town. The water to her home and the business where she works is supplied by the Town of Ferriday water treatment plant.
The Court finds that the testimony of these Class Representatives about the nature and type of their claims was direct and credible. It was not emotional, exaggerated or contrived. They each genuinely expressed, in their own words, what they experienced during the "Boil Water Notice" and why they believe they should be compensated. Whereas the Court reaches no conclusions at this time about the merits of their claims, their testimony about the nature and type of their claims persuades the Court that their claims are, in fact, typical of all persons who were living in, working in, owning property in, and/or owning or operating a business in the Town of Ferriday during the "Boil Water Notice".
The Court finds that individually and as a group the claims of these Class Representatives are typical of the claims of the Class members because they are similar in nature, they arise from the same alleged course of each defendant's conduct, and they are all based on the same legal theories under Louisiana law. The Class Representatives demonstrated to the Court during their testimony that they are capable and prepared to represent the interests of the absent Class members.
The Court further finds that the Class Representatives are typical within the meaning of that term in Louisiana class action jurisprudence because they each present claims that are a cross-section of the Class they seek to represent. Louisiana's "adequacy of representation" criteria "requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members." See e.g. Dumas, supra, 635 So.2d at 450; Livingston Parish, supra, 598 So.2d at 1177; Lailhengue v. Mobil Oil Co., 94 2114 at 5-6 (La.App. 4th Cir.6/7/95); 657 So.2d 542, 546; Ford v. Murphy Oil, 96-2913 at 4 (La.9/9/97); 703 So.2d 542, 544. Louisiana, however, does not require that either the Class Representatives or their claims be identical to all the Class members or to any Class members within the Class. Id.
The Court finds that the five (5) appointed Class Representatives present claims that are typical of those likely to be presented by the absent members of the Class certified herein. Their claims are a cross-section of the claims of the Class members, and are derived from the same common source. Their claims against the defendants are typical of all claims directed at the common nature of the defendants' conduct. The Court finds, therefore, that the "typicality" requirement is satisfied in this case. La. C.C.P. art. 591(A)(3).

4. Adequacy of Representation
The evidence that was presented at the Class Certification hearing satisfies the Court that the claims of the five (5) persons now appointed to serve as Class Representatives and the claims of the absent Class members (defined above) have a common character that predominates over *481 their individual differences, and that the claims of these five (5) Class Representatives are typical of the claims of the members of the Class certified herein. The Court finds that none of the Class Representatives has any personal or financial interest in the outcome of this Class Action litigation that is adverse to the interests of the absent members of the Class, and also that each of them has demonstrated that they are able and willing to serve in the capacity of a Class Representative. La. C.C.P. art. 591(A)(4).
Louisiana requires class actions to be litigated by and through one or more adequate representatives who participate on behalf of and for the absent class members. Satisfying this element requires the proposed Class Representatives to establish that their claims are "a cross-section of, or typical of, the claims of all class members." Andry v. Murphy Oil, U.S.A., Inc., 97-0793 at 6 (La.App. 4th Cir.4/1/98); 710 So.2d 1126, 1130.
During the hearing, each proposed Class Representative testified before the Court about their personal and family background, their work background, their experiences with the Town of Ferriday's water, and of the hardships and problems they claim that they each suffered during the 1999 "Boil Water Notice". Each proposed Class Representative was questioned about the nature of their claims, their understanding of the nature of a class action, and their understanding of the role of a Class Representative. The Court finds that each of these witnesses was credible, candid and forthright in their answers, and that they each possess a good understanding of their role in this case.
The Court also finds that the following attorneys have the necessary skill, background, expertise, experience, and absence of any conflict of interest, in order to be designated as Class Counsel, and are hereby appointed as such: 1. Charles S. Norris, Jr., Liaison Counsel for the Class, of Vidalia, Louisiana; and 2. Stephen B. Murray; 3. Linda S. Harang; and 4. Julie A. Jacobs, all of the Murray Law Firm, of New Orleans, Louisiana.
Each of these counsel submitted an Affidavit to the Court, with a curriculum vitae outlining their experience in litigation in general, and particularly in class action litigation. These Affidavits attest to their desire to be staunch advocates for the Class, and that they are financially able to fund this litigation for the Class. Their Affidavits attest that they are each free of any conflict of interest. Each counsel also attached a current Certificate of Good Standing from the Louisiana Supreme Court as further evidence of their fitness to serve as Class Counsel. No evidence was introduced at the hearing to contradict or challenge any of the information in these Affidavits or curriculum vitae. Additionally, by their presentation to the Court of their witnesses and evidence during the Class Certification hearing, these counsel have demonstrated to the Court that they are able to adequately and ably represent the Class.
The Court finds, therefore, that as to the five (5) Class members now appointed to serve as Class Representatives, and as to the four (4) attorneys appointed to serve as Class Counsel, the "adequacy of representation" requirement is satisfied. La. C.C.P. art. 591(A)(4).

5. Adequate, Objective Class Definition
The evidence in the record supports the Court's decision to define the Class as:
All persons, businesses, or entities who belong to at least one of the following five groups, and who, as a direct result of receiving their water from the Town of Ferriday Water Plant between August *482 20, 1999 and December 22, 1999, have at least one of the following claims: mental and emotional distress; non-reimbursed personal expenses; non-reimbursed business expenses; loss of personal income; loss of business income; annoyance, discomfort, and inconvenience; personal injury including fear of contraction of disease or illness; or property damage.
1. Residents of the Town of Ferriday or any adjacent community at any time between August 20, 1999 and December 22, 1999, and who received their water supply to that residence from the Town of Ferriday Water Plant;
2. Owners and/or operators of businesses in the Town of Ferriday or any adjacent community at any time between August 20, 1999 and December 22, 1999, and that received their water supply to that business from the Town of Ferriday Water Plant;
3. Lessors of residential and/or commercial property located in the Town of Ferriday or any adjacent community at any time between August 20, 1999 and December 22, 1999, and that received their water supply to that property from the Town of Ferriday Water Plant; and
4. Employees of businesses in the Town of Ferriday or any adjacent community at any time between August 20, 1999 and December 22, 1999, and that received their water supply at their place of employment from the Town of Ferriday Water Plant.
5. School students or patients in health care facilities who were required to be in the Town of Ferriday at any time between August 20, 1999 and December 22, 1999, and that received their water supply at their school or health care facility from the Town of Ferriday Water Plant.
Several witnesses testified about the people, residences, and businesses that were included in the State's "Boil Water Advisory" and "Notice". William McKeel, who was the operator of the Ferriday water treatment plant at the time of the "Notice" testified that all residences and businesses supplied by the Ferriday water treatment plant were included in the "Notice". Then Mayor Odeal Montgomery testified that when she received the information from the State, everyone was included-all residences and all businesses. Michael Cazes, Regional Engineer for the Louisiana State Department of Health and Hospitals, confirmed in his testimony that all residences and businesses served by the Ferriday water treatment plant were included in the "Advisory" and the "Notice".
The Class Representatives themselves, by the very nature of their home and work experiences, justify the categories or subclasses of persons included in the Class definition. Three of the Class Representatives (Martello, McKinney, and Roberts) lived in the Town when the "Advisory" and "Notice" started, and two of them (Martello and McKinney) did not move away at any time during the "Notice". They each claim to have suffered inconvenience, emotional distress, and stress because of the water problems they claim they experienced at their homes. Mrs. McKinney and Mrs. Roberts claim to have incurred non-reimbursed personal expenses.
Three of the Class Representatives (Martello, Guidry, and Massey) operated a business in the Town when the "Advisory" and "Notice" started and continued operating their businesses throughout the entire time of the "Notice". They each claim to have suffered inconvenience, emotional distress, and stress because of the water problems they claim they experienced at their businesses. They also claim that *483 they and their businesses either lost income or incurred extraordinary expenses as a result of the water problems they claim they experienced during the entire four (4) months duration of the "Boil Water Notice".
Four of the Class Representatives (Martello, Guidry, Massey, McKinney) worked in the Town throughout the entire time of the "Boil Water Notice". They each claim that they suffered inconvenience, emotional distress, and stress because of the water problems they claim they experienced at their businesses throughout the entire four (4) months of the "Boil Water Notice".
Although none of the Class Representatives was a lessor of residential or commercial property supplied by the Ferriday water system during the time of the "Notice", the Court finds it reasonable, given the other evidence presented, to expect that if there are such persons, then they likely will have claims similar to those of the Class Representatives. If the Court is later presented with evidence indicating that this category should not be included, then the Court can always modify its definition to exclude this category. La. C.C.P. art. 592(A)(3)(c). The Court, therefore, includes this category in the Class definition.
The Court also finds it reasonable to include in the Class school students and patients in health care facilities who were required to be in the Town of Ferriday during the "Boil Water Notice". Given the evidence presented, the Court expects that if there are such persons, then they likely will have claims similar to those of the Class Representatives. If the Court is later presented with evidence indicating that this category should not be included, then the Court can always modify its definition to exclude this category. La. C.C.P. art. 592(A)(3)(c). The Court, therefore, includes this category in the Class definition.
The Court specifically excludes, however, from the Class definition any person who might be described as "transient" in the Town of Ferriday during the time of the "Boil Water Notice". For example, a truck driver who was passing through Ferriday while the "Notice" was in effect may have been temporarily inconvenienced by the requirements of the "Notice". The Court finds that the claims of such a person are too dissimilar from the claims of those who, like the Class Representatives, had to cope with the problems and situations caused by the "Boil Water Notice" on a regular, daily basis. Although such a "transient" person may have the basis for a claim against one or more of the defendants for his temporary inconvenience, the Court finds that this type of claim lacks the common character required for it to be included in this Class. The Court is satisfied that the Class definition is objective and clear enough to put such a "transient" person on notice that any claim he may have is not included for adjudication with the claims of the Class, and that if he desires to bring a claim, he must do so in an individual suit.
The Court finds, therefore, that the Class, as defined herein, is defined objectively in terms of criteria that are relatively easy to ascertain. This definition will enable the Court to objectively determine whether a person or business meets the Class definition for the purpose of verifying the conclusiveness of any judgment on the merits that may be rendered in this case. La. C.C.P. art. 591(A)(5).

6. Article 591(B) Criteria
In addition to satisfying all five of the criteria under La. C.C.P. art. 591(A), the plaintiff also must satisfy at least one of the criteria or categories under La. C.C.P. *484 art. 591(B). The Court finds that the testimony and evidence presented by the plaintiff satisfies this requirement.

A. Article 591(B)(1)(b)
The plaintiff asked the Court to certify this case as a Class Action under either La. C.C.P. art. 591(B)(1)(b) or La. C.C.P. art. 591(B)(3). Specifically, the plaintiff asked for a 591(B)(1)(b) class to be certified against the Town of Ferriday and Owen & White, Inc., with a 591(B)(3) class to be certified against USFilter Waste Water Group, Inc.
The article 591(B)(1)(b) class is commonly referred to as the "limited fund" class. In support of the request to certify the Class under article 591(B)(1)(b), the plaintiff presented evidence, all through oral testimony, on the subject of the financial assets and insurance coverages of the Town of Ferriday and Owen & White, Inc. This testimony primarily was from former Mayor Odeal Montgomery for the Town, and from Eugene Owen for Owen & White, Inc. There were no financial records, insurance policies, or accounting documents presented regarding either of these defendants.
However, because the Court finds that the evidence in support of certifying this case as to all three defendants under article 591(B)(3) is sufficient, there is no need for any further discussion of the 591(B)(1)(b) criteria.

B. Article 591(B)(3)
The Court finds that the evidence presented by the plaintiff satisfies the criteria for certification under La. C.C.P. art. 591(B)(3) as to all three defendants. The article 591(B)(3) class is commonly referred to as the "predominance and superiority" class.

Predominance:
The first part of the 591(B)(3) criteria requires the Court to find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members". La. C.C.P. art. 591(B)(3).
The evidence presented at the Class Certification hearing satisfies the Court that the common issues of liability and fault raised by the Class against all three defendants predominate over the Class members' individual claims for damages. The Class Representatives' testimony satisfies the Court that their claims for damages differ only by degree or amount, but they are all of the same common types and categories, predominantly being claims of inconvenience, annoyance, and discomfort; mental and emotional distress and stress; non-reimbursed personal expenses; and also non-reimbursed business expenses. All of the witnesses testified that they know of no individuals who suffered any physical bodily injury, disease, or illness that was diagnosed to be the result of the four (4) month "Boil Water Notice".
As previously stated in these Reasons, the Court finds not only that the Class members' claims are of a common nature, but also that their claims about their water problems originate from the same common sourcethe Town of Ferriday's only water treatment plant. Therefore, if any defendant is found to be liable to just one Class member due to that defendant's role in causing or contributing to the Class member's water-related complaints, then the finding of liability as to that defendant should be binding on that defendant as to all the other similarly situated Class members, without the need for any other Class member to have a trial on the merits of those same issues.
*485 The Louisiana Supreme Court recognized more than 20 years ago in Stevens v. Board of Trustees that differences in the recoveries sought by individual Class members, differences in the particularities of their claims and circumstances, and specific variations that might ultimately lead to recoveries by some Class members and not by others did not obviate the "common character" of a suit based on the same factual course of conduct by the defendants and the same legal relationship between the defendants and the Class members. The Stevens Court explained that under such circumstances, whether the tortious conduct arises out of a single incident or a long-term course of conduct, common issues as to liability predominate. The predominance of common liability issues invokes the "functional and pragmatic factors" that should be taken into consideration by this Court in aid of its ultimate determination of whether "the class action will clearly be more useful than other available procedures for definitive determination of a common-based right...." Stevens v. Board of Trustees, 309 So.2d 144, 151 (La.1975).

Superiority:
The second part of the 591(B)(3) criteria requires the Court to find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." La. C.C.P. art. 591(B)(3).
The Court finds that the Class Certification hearing itself, conducted for four (4) days, with all witnesses testifying live before the Court (for a total of approximately 30 hours of live testimony; none by deposition), demonstrates the procedural advantage of trying the Class members' common issues of liability and fault against all three defendants in one common trial, at one time. This is especially true since there was no expert testimony offered by any party at the Class Certification hearing on the cause of the Ferriday water problems or on the cause of the 1999 "Boil Water Notice". It is clear to the Court that any such expert testimony would be common to all Class members, and that trying the defendants' liability and fault in one common trial is superior to the other available procedural methods of either mass joinder and consolidation, or repetitive individual trials.
It is clear to this Court that such multiple, subsequent trials would require most, if not almost all, of the same testimony from the same witnesses and experts, using the same documents and exhibits. The Court finds, therefore, that managing this case as a Class Action is the superior method for achieving the goals of fairness and judicial efficiency. As a Class Action, the Court has the authority to order, sua sponte, separate trials of separate issues before separate juries. In all other cases except the Class Action, the consent of the parties is required. See e.g. La. C.C.P. arts. 1562, 1736. Louisiana jurisprudence makes note of this unique ability in affirming the use of the Class Action procedure for the determination of common liability issues in mass torts. Adams v. CSX Railroads, 615 So.2d 476, 483 (La.App. 4th Cir.1993); Dumas, supra, 635 So.2d at 452. The ability of a district court to order such a trial without the stipulation or consent of the parties has been determined to be a significant factor in the superiority of class action management. Id.

Article 591(B)(3) Factors:
As a part of the predominance and superiority analysis, article 591(B)(3) lists six nonexclusive factors for this Court to consider:
*486 Factor (a) suggests that certification is appropriate when the Class members have not displayed an interest in individually controlling the prosecution or defense of separate actions. This District Court's records evidence that this is the only suit that has been filed, originally identifying only one plaintiff. There are now four (4) more Class members who have stepped forward with the named plaintiff, Gloria Martello, and stated their desire and willingness to serve as Class Representatives. Four (4) Class Representatives (Martello, Guidry, McKinney, Roberts) testified that they will pursue their own claims individually if this case is not certified as a class action, but none of them has taken any action at this time to file their own individual suit. The Court finds that this criteria is satisfied.
Factor (b) suggests that certification is appropriate when there is no other litigation, or only a few suits are already under way by or against members of the Class and involving these same issues. As with factor (a), the District Court's records evidence that there is no suit pending or filed in any Court in any District on these same issues other than this one. The Court finds that this criteria is satisfied.
Factor (c) suggests that certification is appropriate when it is desirable to concentrate complex litigation in one forum or district. The focal point of this litigation is the Ferriday water treatment plant and intake facility. These facilities are located in Concordia Parish, and serve a Class of persons that is predominantly located in Concordia Parish. Most of the witnesses in this case live or work in Concordia Parish. There has not been any challenge by the defendants to this District Court as the proper venue or forum for this litigation. The Court finds that this criteria is satisfied.
Factor (d) suggests that certification is appropriate when it is determined that directing the case as a Class Action will not present or create any irreconcilable management difficulties. This Court recognizes that a case of this type inevitably will create some management problems. Since it is this Court that must ultimately reconcile and solve these problems, this Court must decide how best to try the claims of these Class members.
The Court believes that it is capable of solving the management problems that this case may present, but the Court can avail itself of assistance, if needed, in the form of Court-appointed experts (La. C.C.P. arts. 192, 373), or a Court-appointed Special Master (La. R.S. 13:4165). If, however, the problems become too difficult to resolve, this Court always has the discretion to alter or amend the Class definition, or decertify some or all of the Class. La. C.C.P. art. 592(A)(3)(c). In exercising this discretion, the Louisiana Supreme Court has held that, because of a Court's ability to review and/or modify its certification ruling at any time, "if an error is to be made, it should be made in favor of and not against the maintenance of the class." McCastle, supra, 456 So.2d at 620; Ellis v. Georgia-Pacific, 550 So.2d 1310, 1318 (La. App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990); La. C.C.P. art. 592(A)(3)(c). The Court finds, therefore, that this criteria is satisfied.
Factor (e) suggests that certification is appropriate when it would be impractical or unlikely for the Class members to be able to pursue their claims but for the class action procedure. This factor is particularly important in cases such as this one, where the Court anticipates that many of the Class members may have claims that might be considered "negative value" claims. The policy of providing a meaningful opportunity for persons with *487 low value claims to pursue a remedy is at the very core of the rationale behind the class action procedure. The United States Supreme Court has even said that the most dominant reason for a Rule 23(b)(3)3 class action is the vindication of the rights of groups of persons with negative value claims. See Amchem Products, Inc. v. Windsor, [521 U.S. 591,] 117 S.Ct. 2231, 2246[, 138 L.Ed.2d 689] (1997). The Court finds that this criteria is satisfied.
Factor (f) suggests that certification is appropriate when the relief being demanded, including the vindication of any implicated public policies or legal rights, justifies the costs and burdens of class litigation. As was mentioned earlier, if even one plaintiff filed an individual suit against these three defendants, because of the nature of the case, the issues involved, and the scientific nature of many of the facts, this case would be considered complex litigation.
Having five (5) Class Representatives litigate all of the common issues of liability and fault at one time, with the outcome having res judicata effect for more than 4,500 Class members, will save costs and streamline the litigation. The Court finds that the cost of trying all of the common issues of liability and causation in one trial, with the Class represented by the five (5) Representatives herein appointed, sufficiently outweighs the prospect of trying these same issues repetitively. The Court finds that this criteria is satisfied.
The Court finds, therefore, that the criteria of La. C.C.P. art. 591(B)(3), which requires that the common issues must predominate over the individual ones, and which also requires that the class action procedure must be superior to other available procedural methods for managing and trying the claims, is satisfied in this case as to all three defendants.