STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 05-833 consolidated with CA 05-834, CA 05-835

ANNIE R.H. RAPP, ET AL.

VERSUS

IBERIA PARISH SCHOOL BOARD, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 101420-D C/W 101490-D, 101787-D
HONORABLE WILLIAM D. HUNTER, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Michael G. Sullivan, and J. David Painter, Judges.

AFFIRMED.

**David Robert Kelly**
**Breazeale, Sachse, & Wilson**
**P. O. Box 3197**
**Baton Rouge, LA 70821**
**(225) 387-4000**
**Counsel for Defendant/Appellant:**
**Honeywell International, Inc.**

**Walter Clayton Dumas**
**Dumas & Associates Law Corporation**
**P. O. Box 1366**
**Baton Rouge, LA 70821-1366**
**(225) 383-4701**
**Counsel for Plaintiffs/Appellees:**
**Kelly Charpentier**
**Fred Charpentier**
**Harold Alexander, Jr.**

David W. Groner
Attorney at Law
P. O. Box 9207
New Iberia, La 70562-2907
(337) 364-3629
Counsel for Plaintiffs/Appellees:
Jeanine Collins
Nicole Collins
James Neil Collins
Claire Collins

Gary Mark Zwain
Duplass, Zwain & Buirgeios
3838 N. Causeway Blvd Ste 2900
Metairie, LA 70002
(504) 832-3700
Counsel for Defendant/Appellant:
Crown Roofing Services, Inc.

David Perry Salley
Salley, Hite, Rivera & Mercer
3753 Perkins Rd., Ste 5
Baton Rouge, LA 70808
(225) 379-3133
Counsel for Defendant/Appellant:
Iberia Parish School Board

P. Charles Calahan
Attorney at Law
P. O. Box 9547
New Iberia, LA 70562-9547
(337) 365-8046
Counsel for Plaintiffs/Appellees:
B.H. Calahan
Annie R.H. Rapp

Chet Girard Boudreaux
McKernan Law Firm
8710 Jefferson Highway
Baton Rouge, LA 70809
(225) 926-1234
Counsel for Plaintiffs/Appellees:
James Neil Collins
Claire Collins
B.H. Calahan
Nicole Collins
Jeanine Collins
Harold Alexander, Jr.
Annie R.H. Rapp
Fred Charpentier
Kelly Charpentier

**SAUNDERS, Judge.**

This class action arises from injuries allegedly sustained when the claimants were exposed to chemical fumes at New Iberia Senior High School (hereinafter referred to as "NISH"). Plaintiffs claim that fumes from certain chemicals used during a roofing project entered the school complex and caused injuries. Three suits, all styled as class actions, were filed shortly after the incident and were subsequently consolidated. A master class petition was filed and, following a hearing, the trial court certified the class. Defendants timely appealed the judgment of certification. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In September 2003, Crown Roofing Services (hereinafter referred to as "Crown") performed work on the roof of certain buildings at NISH. Crown used the Honeywell, Inc. product Armor-Flex during this process. Armor-Flex contains vinyl acetate terpolymer, lignin surfactant, ethylene glycol phenyl ether, sodium metaborate, and other chemicals. While the product was in use, fumes from these chemicals drifted into classrooms, hallways, and other areas in the affected buildings. At the request of the Iberia Parish School Board, Crown ceased roofing activities until the school closed for Christmas break.

Shortly after Crown ceased their activities, three separate suits were filed, each styled as a class action proceeding. The three suits were consolidated and a Master Class Petition for Damages was filed on June 17, 2004, seeking to certify a class of:

> [a]ny and all persons who attended, visited and/or were present at the NISH complex on or about September, October and/or November of 2003 and who suffered indirect or consequential injury as a result of exposure to, the product of Armor-Flex.

A hearing on class certification was held on October 22, 2004. The parties then submitted post-hearing briefs and a judgment certifying the class was issued on December 17, 2004. Defendants appeal that judgment.

**ASSIGNMENTS OF ERROR**

    1)    The trial court erred in certifying this matter as a class action.

        A)    The trial court erred in finding that the numerosity requirement has been satisfied. This error includes but is not limited to the trial court's failure to consider any evidence relating to exposure, levels of exposure and resulting injuries/damages.

        B)    The trial court erred in finding that the commonality requirement has been satisfied.

        C)    The trial court erred in finding that the typicality requirement has been satisfied.

        D)    The trial court erred in finding that the representative parties will fairly and adequately protect the interests of the class.

        E)    The trial court erred in finding that the class can be objectively defined.

        F)    The trial court erred in finding that common questions of law and fact predominate.

        G)    The trial court erred in finding that the class action procedure is superior to other procedural options for resolving the plaintiffs' claim.

**STANDARD OF REVIEW**

When reviewing the certification of a class, the particular facts and circumstances of each case must be analyzed. *Martello v. City of Ferriday*, 01-1240 (La.App. 3 Cir. 3/6/02), 813 So.2d 467, *writs denied*, 02-1002, 02-990, 02-1514 (La. 6/7/02), 818 So.2d 769, 770, 771. Trial courts, however, have broad discretion in

deciding whether a class should be certified. *Id.* Trial courts also have the discretion to amend or reverse certification determinations at any time. La.Code Civ.P. art. 592(A)(3)(c). Appellate courts may not disturb a trial court's ruling on certification unless it is manifestly erroneous. *Martello*, 813 So.2d 467. Additionally, courts should err in favor of the maintenance of class actions. *McCastle v. Rollins Envtl. Servs. of La., Inc.*, 456 So.2d 612 (La.1984). Furthermore, whether plaintiffs have stated a cause of action or the probability of their success on the merits, should not concern the court. *West v. G&H Seed Co., et al.*, 01-1453 (La.App. 3 Cir. 8/28/02), 832 So.2d 274.

**ASSIGNMENT OF ERROR NUMBER 1A**

In order for a class action to be maintained, plaintiffs must show that:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

3

(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or

(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

La.Code Civ.P. art. 591. In this assignment, defendants argue that the trial court erred in finding that plaintiffs satisfied the numerosity requirement and rely heavily upon the first circuit's decision in *Hampton v. Illinois Central Railroad Co.*, 98-0430 to 98-435 (La.App. 1 Cir. 4/1/99), 730 So.2d 1091 in support of their contention. In *Hampton*, the first circuit reversed the trial court's certification of a class, concluding that "there was insufficient evidence which causally related the alleged physical symptoms of the proposed class representative to the incident." *Id*. at 1096. The court noted that there was conflicting testimony regarding symptoms and an absence of expert testimony indicating a causal link between a chemical leak and injuries; therefore, the record did not support that "numerosity of plausible claims" was established. *Id*. at 1094-95.

The *Hampton* decision was subsequently revisited and distinguished by the first circuit in *Boyd v. Allied Signal, Inc.*, 03-1840 to 03-1843 (La.App. 1 Cir. 12/30/04), 898 So.2d 450, *writ denied*, 05-191 (La. 4/1/05), 897 So.2d 606. *Boyd* is cited by plaintiffs in support of their contention that the expert testimony presented and establishment of a geographical boundary distinguish this matter from *Hampton*. Defendants cite *Boyd* as a re-emphasis of the so-called plausibility requirement by the First Circuit. In *Boyd*, a tractor trailer carrying toxic chemicals began to leak and the driver stopped the unit on Interstate 12. *Id*. Eleven homes were evacuated and the problem was eventually remedied. *Id*. A class was certified and the defendants appealed the certification. *Id*. The court appied the same standard of review set forth here and noted that "[t]he party seeking to maintain the class action bears the initial burden of *prima facie* proof of" the elements of a class action. *Id*. at 457. Subsequently, the court stated that requiring plausibility as a component of the prima

5

facie showing was done to emphasize the fact that mere allegations that a large number of potential claimants exist are not sufficient to establish numerosity. *Id.* Specifically the court concluded that:

> [i]n the case of a mass tort, this burden of plausibility requires *some* evidence of a causal link between the incident and the injuries or damages claimed by sufficiently numerous class members. This prima facie showing need not rise to the status of proof by a preponderance of the evidence, as would be necessary to prevail on the merits.

*Id.* [Emphasis added]. The court went on to "emphasize" that the burden "is not fairly comparable to the burden of proof of causation, medical or otherwise, on the merits." *Id.* at 463. After acknowledging the expert testimony offered by plaintiffs, the court noted the sheer number of submitted "proof of claim" forms, as well as the number of people residing in the affected area, and determined that numerosity was satisfied. *Id.*

Furthermore, *Hampton* has only been cited once by this court. In *West* 832 So.2d 274, we discussed *Hampton* and did not specifically adopt the plausibility requirement found therein. In that case, crawfish farmers filed suit for damages to their crops allegedly due to an insecticide. *Id.* A class was certified and defendants appealed arguing, among other things, that numerosity, as defined in *Hampton*, was not satisfied. *Id.* Interpreting the numerosity requirement, this court stated that "the 'aggrieved persons' aspect of numerosity" does not require plaintiffs to prove liability. *Id.* We found that the plaintiffs did not merely allege that a large group of claimants existed, but also introduced testimony indicating there was a large number of farmers who attributed crawfish mortality rates to the insecticide. *Id.* Defendants argued that the plaintiffs' showing was inadequate because use of the particular insecticide coincided with a severe drought. *Id.* This court held that to weigh these

6

two allegations was to make a determination on the merits, which was prohibited at that stage of the proceedings. *Id*. We do the same here.

Defendants herein argue that plaintiffs have not offered evidence of a causal link between the use of the chemicals and the injuries alleged by hundreds of claimants. We disagree. Dr. Barry Levy, an expert witness for plaintiffs, stated in his report that students, teachers, and staff members of NISH developed persistent symptoms such as headache, nausea, and dizziness related to the exposure of chemicals at the complex. He also noted documented laboratory abnormalities among those exposed to the chemicals. Dr. Vernon Rose, another expert witness for plaintiffs, stated in his report that the heating ventilation and air conditioner intake valves, responsible for bringing fresh outside air into the buildings, were located on the roof near the roofing project. Accordingly, Dr. Rose opined that most, if not all, occupants of NISH were exposed to the vapors and fumes generated by the roofing project. Furthermore, Dr. Paul Templet noted in his report that the Armor-Flex manufacturer's information advises those applying the product to cover fresh air intakes in order to reduce the likelihood that odors enter the building. He also testified that he was affected by the vapors during his visit to NISH. Defendants further argue that, based upon air sample data, the concentration of chemicals found in the school did not exceed acceptable limits. Dr. Templet, however, noted that it is likely that the chemical concentrations were higher before the roofing work was stopped approximately two and a half weeks before samples were taken.

Based upon the record before us, we find that plaintiffs did not rest upon mere allegations that there was a large number of potential claimants. Rather, they introduced evidence of numerous aggrieved individuals. While there is contradictory

7

evidence regarding exposure, resolving that issue goes to the merits, which we are not permitted to do at this stage in the proceedings. Our role at this stage is that of gatekeeper, not final arbiter.

Next, we must determine whether the class is so numerous that joinder is impracticable. La.Code Civ.P. art. 591(A)(1). Because hundreds of claimants have already been identified and others possibly remain, we conclude that joinder would be impracticable. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBERS 1B, 1F, AND 1G**

Because the commonality requirement in La.Code Civ.P. art. 591(A) and the requirements that common questions of law or fact predominate and that the class action be superior to other adjudicatory methods for the purpose of effectuating substantive law, judicial efficiency, and individual fairness in La.Code Civ.P. art. 591(B)(3) are so related, we will address all three together. Defendants argue that the trial court erred in finding that there are questions of law or fact common to the class and that, if common questions are found, they do not predominate over questions affecting individual members. Defendants argue that the varying location of the claimants within the complex, their varying lengths of exposure and reported symptoms, the diversity of medical providers from whom treatment was sought, and different elements and types of damages alleged show that individual issues predominate. Furthermore, plaintiffs' varying medical histories, as well as other possible sources of exposure and theories of liability, are also urged by defendants as reasons why the commonality requirement is not satisfied and individual issues predominate over questions common to the class. Defendants cite *Richardson v.*

8

*American Cyanamid Co.*, 99-675 to 99-682 (La.App. 5 Cir. 2/29/00), 757 So.2d 135 in support of their argument. This argument is unpersuasive.

In *Richardson*, the court noted internal inconsistencies in alleged injuries, among several other factors, when decertifying a class. *Id*. The class in *Richardson*, however, was decertified after a trial on the merits. Here, there has been no trial on the merits, therefore, *Richardson* is distinguishable from the case at bar.

Furthermore, "[t]he test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Duhe v. Texaco, Inc.*, 99-2002, p. 12 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078, *writ denied*, 01-637 (La. 4/27/01), 791 So.2d 637 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1169 (2000). The trial court found that the plaintiffs were exposed to the same chemicals, at the same location, and suffered the same injuries. Accordingly, they face common legal and factual questions regarding liability and fault that predominate over questions specific to individual members of the class. We find no manifest error in this conclusion. The common question here is liability. If liability is established for one member, it is present for all. This is true regardless of the fact that there may be different levels of damages proven by different groups of plaintiffs, the proof of which may hinge upon their location within the complex and the duration of their exposure. Because resolution of the liability issue will certainly affect all or a significant portion of the putative class members there are questions of law or fact common to the class.

Finally, the trial court concluded that, in the case *sub judice*, the class action procedure is superior "to other adjudicatory methods for the purpose of effectuating

9

substantive law, judicial efficiency, and individual fairness." La.Code Civ.P. art. 591(B)(3). Defendants point to a lengthy list of potential subclasses containing claimants exposed at different times and locations as a reason why the class action is not superior to other adjudicatory methods. They then cite *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913, 96-2917, 96-2929 (La. 9/9/97), 703 So.2d 542 in support of their argument. As previously noted, variations regarding time and location of exposure among the list of possible subclasses goes to proof of damages. When the central issue is liability, however, "varying degrees of damages . . . or [the fact] that class members must individually prove their right to recover *does not* preclude class certification." *West*, 832 So.2d at 287, (quoting *Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc.*, 99-494, p. 3 (La. 11/12/99), 759 So.2d 755, 756). Furthermore, *Ford* is distinguishable from the instant matter. In *Ford*, residents of St. Bernard and Orleans parishes brought suit against four petrochemical plants along the Mississippi River. *Ford*, 703 So.2d 542. The court noted that, because of the nature of claims involved, each class member would have to prove different facts to establish the defendants' liability. That is not the case here. As the trial court correctly found, all claimants face the same questions regarding liability and fault. Accordingly, *Ford* does not control our analysis in this matter.

We find that the trial court was not manifestly erroneous in ruling that the class action procedure is superior in terms of effectuating substantive law, judicial efficiency, and individual fairness. La.Code Civ.P. art. 591(B)(3). In the instant matter, the class action procedure promotes these stated objectives because liability is the central issue and common to all parties. Utilization of this procedure will allow this issue to be determined in one proceeding without the risk of different findings

10

regarding this central issue. It also allows the court to protect the interests of individuals who might not bring an individual suit, but were injured nonetheless. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER 1C**

In this assignment, defendants contend that the claims of the representative parties are not typical of the remainder of the class. Specifically, defendants argue that the named plaintiffs allegedly suffered nosebleeds, headaches, and shortness of breath. These injuries, according to defendants, are divergent from the claims of other class members who claim to have suffered symptoms commonly associated with smoking, seasonal colds, and allergies. We disagree.

The typicality requirement is satisfied if the representatives' claims and those of the putative class members "arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory." *West*, 832 So.2d at 293, (quoting *Duhe*, 779 So.2d at 1079). Furthermore, the test for typicality is not a demanding one. *Id*. Because the claims of the representative parties and the remainder of the proposed class all arise from their exposure to chemicals at NISH and their theory of liability is the same as to each defendant, we find that the trial judge was not manifestly erroneous in concluding that the typicality requirement was satisfied. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER 1D**

Here, defendants argue that the trial judge erred in determining that the representative parties adequately protect the interests of the class. Defendants first argue that the interests of the class are not protected because suit has not been brought against manufacturers of other roofing products used by Crown that could

have caused the injuries alleged by plaintiffs. These considerations, however, go toward liability. Defendants will have an opportunity to show that no injuries were caused at all or that someone else was responsible for the alleged injuries at a trial on the merits. The fact that plaintiffs did not name other parties whom defendants believe should be in the suit does not mean that the rights of the putative class members are not protected by the representative parties.

Defendants then contend that plaintiffs' counsel and expert fall within the class as presently defined; therefore, by virtue of their roles in this matter, they have interests that are in conflict with other class members. There is no evidence, however, that Mr. Groner and Dr. Templet have filed claims in the matter. Furthermore, if they decline to do so, the claims of the remainder of the class are not prejudiced as argued by defendants. Their failure to assert a claim would be an attempt to avoid possible conflict, not an indictment on the veracity of the underlying allegations. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER 1E**

In this assignment, defendants argue that the trial court erred in finding that the class can be objectively defined. Specifically, defendants claim that the class definition, providing in pertinent part that the class consists of "[a]ny and all persons who attended, visited and/or were present at the NISH complex on or about September, October and/or November of 2003," is overly broad both temporally and geographically. They contend the evidence suggests that the class should be limited to those present in a specific area of the high school during a shorter time frame than that contained within the class definition. This argument is unpersuasive.

12

First, any determination on our part that there was no exposure in certain areas of the complex at given times is a determination of the merits of the case. As previously noted, such a determination is improper at this stage of the proceeding. Furthermore, pursuant to La.Code Civ.P. art. 592(A)(3)(c), the trial court may amend or reverse its original ruling on certification or enlarge or restrict the constituency of the class. When ruling on this issue the trial court noted that the class definition may be overly broad and reserved its right to redefine the constituency of the class. We do not believe, as do defendants, that this observation is a shortcut to the certification process. The trial court determined that there are objective and ascertainable criteria by which this class can be defined. Given that this incident consists of chemical leakage at a single location, we find no manifest error in the trial court's conclusion. This assignment lacks merit.

**CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed equally against defendants.

**AFFIRMED**.