831 So.2d 995 (2002)
Dorothy L. MATHEWS, et al.
v.
HIXSON BROTHERS, INC., et al.
No. 02-124.
Court of Appeal of Louisiana, Third Circuit.
July 31, 2002.
Writ Denied December 13, 2002.
*997 Robert J. Diliberto, Linda S. Harang, Murray Law Firm, New Orleans, LA, for Plaintiffs/Appellees, Dorothy L. Mathews, Susan M. Robbins.
Daniel E. Becnel, Becnel, Landry & Becnel, Reserve, LA, for Plaintiffs/Appellees, Dorothy L. Mathews, Susan M. Robbins.
Andrew P. Texada, Stafford, Stewart & Potter, Alexandria, LA, for Defendants/Appellants, Hixson Brothers, Inc., Hixson Brothers Funeral Home.
Susie Morgan, Wiener, Weiss & Madison, Shreveport, LA, for Defendant/Appellant, Kilpatrick Life Insurance Company.
Court composed of MARC T. AMY, MICHAEL G. SULLIVAN, and ELIZABETH A. PICKETT, Judges.
SULLIVAN, Judge.
Defendants, Kilpatrick Life Insurance Company (Kilpatrick), Hixson Brothers, Inc., and Hixson Brothers Funeral Home (collectively Hixson Brothers), appeal a trial court judgment certifying this matter as a class action. For the following reasons, we affirm certification and remand for further proceedings consistent with this opinion.

Procedural History
On May 26, 1999, Dorothy L. Mathews filed the instant suit, alleging that Defendants failed to honor a burial policy purchased by her husband, Joe L. Mathews, Sr. The policy, issued in 1968 by Central State Life Insurance Company (Central State) with a face value of $1,000.00, was assumed by Kilpatrick in 1994. Specifically, Mrs. Mathews alleged that, upon presentation of the policy after her husband's death on May 31, 1998, Hixson Brothers informed her that she had to accept a particular casket in order to receive the full benefits of the policy. Mrs. Mathews further alleged that the casket offered was "completely unacceptable" and that Hixson Brothers refused to allow her to purchase an alternative casket at full retail value without forfeiting the other benefits under the policy. Because she "had no reasonable choice but to purchase another casket" for her husband to have a "proper and dignified burial," Mrs. Mathews alleged that she was forced to forfeit funeral benefits valued at approximately $4,500.00 and to purchase merchandise and services totaling $6,299.00, to which she was given a credit of $1,000.00, representing the face amount of the policy. Seeking damages for breach of contract, including nonpecuniary damages, Mrs. Mathews also sought certification of a class on behalf of other beneficiaries or heirs who made funeral arrangements for an insured under a Central State policy at a funeral home owned by Hixson Brothers.
On December 13, 1999, a second Plaintiff, Susan M. Robbins, was added, asserting similar claims in connection with two Central State burial policies issued to her grandmother, Daisy B. Robbins, who died on November 16, 1994.
After a hearing on December 12, 2000, the trial court issued written reasons on September 26, 2001, granting Plaintiffs' *998 motion for class certification. In those reasons, the trial court stated that it intended to define the class in this case as follows:
Every private or juridical person (including, but not limited to, natural persons, corporations, partnerships, trusts, limited liability corporations, joint ventures, estates, guardians, tutors, etc.):
(1) Who is a beneficiary and/or heir of all known insured persons who purchased burial insurance policies that were issued by Central State Life Insurance Company or Hixson Life Insurance Company; and
(2) Who upon the death of the insured, made arrangements for the burial of the named insured at a funeral home located in the State of Louisiana and owned by Hixson Brothers, Inc., between May 26, 1989 through September 26, 2001.
In response to defense arguments that many claims of class members had prescribed because most of the policies at issue limited the beneficiary's right to file suit to two years from the death of the insured, the trial court stated in its reasons that such contractual limitations on prescription were "not controlling and null."

Discussion
The prerequisites for maintaining a class action are found in La.Code Civ.P. art. 591. Those requirements have generally been summarized as follows: numerosity, commonality, typicality, the adequacy of the representative parties to protect the interests of the class, an objectively definable class, the predominance of common issues, and the superiority of the class action procedure.[1] In this appeal, *999 Kilpatrick argues the trial court's ruling on all of the above issues was in error. Hixson Brothers asserts error in only two issues: numerosity and predominance.
The burden is on the plaintiff to establish that the statutory criteria for a class certification are met. Spitzfaden v. Dow Corning Corp., 619 So.2d 795 (La. App. 4 Cir.), writs denied, 624 So.2d 1236, 1237 (La.1993). "A trial court has broad discretion to certify a class through its analysis of the facts and circumstances before it. The trial court's decision cannot be overturned absent manifest error." Martello v. City of Ferriday, 01-1240, p. 9 (La.App. 3 Cir. 3/6/02); 813 So.2d 467, 476, writs denied, 02-1002 (La.6/7/02); 818 So.2d 769, 02-1514 (La.6/7/02); 818 So.2d 771 (quoting Thomas v. Charles Schwab & Co., Inc., 95-1405, p. 8 (La.App. 3 Cir. 9/25/96); 683 So.2d 734, 739, writs denied, 96-2579 (La.1/24/97); 686 So.2d 859 and 97-9 (La.1/24/97); 686 So.2d 858) (citations omitted). Further, "if there is to be an error made, it should be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." McCastle v. Rollins Envtl. Servs. of Louisiana, Inc., 456 So.2d 612, 620 (La.1984).
However, where the fact-finding process has been interdicted by legal error in the trial court, the manifest error standard is no longer applicable. Evans v. Lungrin, 97-541, 97-577 (La.2/6/98); 708 So.2d 731. Defendant, Hixson Brothers, argues that the trial court made such a legal error in reasoning that the two-year limitation on filing suit contained in most of the policies was not valid under Louisiana law. Hixson Brothers further argues that this error affected the trial court's findings as to numerosity because its decision that this requirement was met was based upon the number of potential claims dating back ten years from the filing of the instant suit.
We agree with Hixson Brothers that the trial court's conclusion about the validity of the contractual prescriptive period was in error. "In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." Midco Louisiana Co. v. Aquatic Equip. & Eng'g, Inc., 423 So.2d 10, 12 (La.App. 1 Cir.1982). Under La.R.S. 22:629(A)(3), an insurance contract may not limit the right of action against the insurer "to a period of less than one year from the time when the cause of action accrues ... unless otherwise specifically provided in this Code." In Louette v. Security Industrial Insurance Co., 361 So.2d 1348 (La.App. 3 Cir.), writ denied, 364 So.2d 564 (La.1978), this court construed La.R.S. 22:629 in the context of a *1000 burial insurance policy. That policy provided that suit had to be brought within one year of the date of loss or death, but it also stated that suit could not be filed until sixty days after a proof of loss was filed. We voided that policy's time limitation on filing suit, but only because the sixty-day delay clause resulted in a period of time less than the mandatory one-year period in La.R.S. 22:629(A)(3). In the present case, a two-year limitation, even with a similar sixty-day delay clause, would not be in violation of the statute. For a case upholding a health insurance policy's time limitation in excess of one year, see Touro Infirmary v. Henderson, 92-2720 (La.App. 4 Cir. 12/28/95); 666 So.2d 686.
We now must determine the effect of this error on the trial court's ruling. Because the only issue before the trial court at the certification hearing is the appropriateness of the class action procedural device, the trial court is not concerned with whether the plaintiffs have stated a cause of action or with the likelihood that they will prevail on merits. Johnson v. Orleans Parish Sch. Bd., 00-825 (La.App. 4 Cir. 6/27/01); 790 So.2d 734, writs denied, 01-2215 (La.11/9/01); 801 So.2d 379 and 01-2216, 01-2225 (La.11/9/01); 801 So.2d 378. However, the possibility that the defendants will assert affirmative defenses such as comparative fault and prescription should be considered. Banks v. New York Life Ins. Co., 98-551 (La.7/2/99); 737 So.2d 1275. While affirmative defenses such as prescription should be considered in the decision of whether to certify a class, they are not "an automatic disqualifier." Duhe v. Texaco, Inc., 99-2002, p. 25 (La App. 3 Cir. 2/7/01); 779 So.2d 1070, 1085, writ denied, 01-637 (La.4/27/01); 791 So.2d 637 (quoting Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir.2000)).
Numerosity
In the present case, Hixson Brothers argues that the issue of prescription has impacted the trial court's decision on the first requirement of Article 591: that "[t]he class is so numerous that joinder of all members is impracticable." Generally, a class action is appropriate when the interested parties appear to be so numerous that separate suits would unduly burden the courts. Cotton v. Gaylord Container, 96-1958 (La.App. 1 Cir. 3/27/97); 691 So.2d 760, writs denied, 97-800, 97-830 (La.4/8/97); 693 So.2d 147. "Numerosity is not shown by mere allegations of a large number of potential claimants. The burden is on the plaintiff-mover to make a prima facie showing that a definable group of aggrieved persons exist[s], and that the class is so numerous that joinder is impractical. Conclusory allegations are not sufficient." Johnson, 790 So.2d at 741. However, "no set number of plaintiffs is required in order to fulfill this requirement. In fact, difficulty in identifying the claimants is one of the factors that make joinder impracticable and a class action appropriate." Id. (citing Dumas v. Angus Chemical Co., 25,632 (La.App. 2 Cir. 3/30/94); 635 So.2d 446, writ denied, 94-1120 (La.6/24/94); 640 So.2d 1394).
To show numerosity, Plaintiffs introduced evidence of the number of payments that Kilpatrick made to Hixson Brothers from May 8, 1989 through January 5, 2000, as well as twenty-five different sample policies. Bill McKellar, Kilpatrick's chief financial officer, testified that Kilpatrick was able to identify 4,606 payments pursuant to its policies between those dates. That total, he explained, represented 2,464 payments that Kilpatrick could match to a specific policy number and plan code and 2,142 payments that Kilpatrick was unable to cross-reference to a particular policy. Bruce Robinson, vice *1001 president and general manager of Hixson Brothers, estimated that, for the year 1999, Hixson Brothers performed approximately 800 funeral services at its five locations, with about twenty-five percent, or 200, of those services involving Kilpatrick policies. According to Mr. Robinson, only a small percentage of the Kilpatrick beneficiaries accepted the casket offered with the policy. He explained that most of those customers preferred a different casket and that only rarely did anyone become upset or angry over Hixson Brothers' interpretation of the policy. Of the twenty-five sample policies introduced, only five did not contain the clause limiting the beneficiary's right of action against the insurer to two years from the death of the insured.
In finding that Plaintiffs met the numerosity requirement, the trial court stated that "there is a percentage of the 4,606 policyholders who may have or will be affected by the outcome in this case. The implications raised by this percentage clearly foreshadow the probability that numerous individual suits would or may be filed if the class certification were denied." Of course, the percentage of policyholders affected would be substantially reduced if the two-year limitation on filing suit contained in most of the policies were enforced. Nonetheless, Mr. Robinson's testimony that Hixson Brothers processed approximately 200 of Kilpatrick's policies in one year demonstrates that a significant number of policyholders would still be affected by this suit. Rather than concluding that the trial court's failure to recognize the prescription defense "automatically disqualifies" the suit as class action, we find that issue is more appropriately addressed by La.Code Civ.P. art. 592(B)(3)(c) (emphasis added), which provides:
In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.

Because the record thus far supports a showing of numerosity, despite the trial court's incorrect statement of law, and because any error arising from that misconception can be remedied on remand, we will review the remainder of the trial court's ruling under the manifest error standard.
Both Kilpatrick and Hixson Brothers also argue that Plaintiffs have failed to identify a sufficient number of aggrieved parties because only two individuals have filed suit thus far. In Johnson, 790 So.2d 734, however, the court found the numerosity requirement was satisfied even though only one claimant out of a potential 1,000 had come forward at the time of certification. In the case sub judice, the Plaintiffs have shown that Hixson Brothers handled approximately 200 policies like that of Mrs. Mathews in one year alone. On this record, we find that Plaintiffs have presented sufficient evidence to satisfy the numerosity requirement of Article 591(A)(1).
Commonality
Under Article 591(A)(2), Plaintiffs must next show that "[t]here are questions of law or fact common to the class." In Duhe, 779 So.2d at 1078 (citation omitted), we stated of this requirement:
The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. A common question is defined as *1002 one which when answered as to one class member is answered to all of them.
The trial court found the question common to the class to be "one theory of liability ... whether the Defendants are liable for their alleged failure to fully honor certain burial policies by not permitting Plaintiffs to select an alternative casket to bury their deceased." Defendants argue the trial court failed to consider the differences in the language of the many policies introduced and individual issues of proof.
The trial court acknowledged that the policies did not contain identical language, but it still found a common question in that "Defendants have not suggested that they have ever issued a burial policy that permits one to select an alternative casket without negating the insurance policy." We find no error in the trial court's analysis, in light of the evidence that Defendants treated all policyholders alikei.e., that none were permitted to purchase an alternative casket without forfeiting the other benefits of the policy. Mr. Robinson testified that the funeral benefits offered to each customer were determined by the amount of the policy rather than its language: if that amount were less than $1,500.00, then the customer was only offered one casket, a cloth-covered model that was not for sale to the general public. One difference in the policies cited by Defendants is that some provided that the funeral benefits would include a "Casket" while others provided for a "Casket (selected by family)." Mr. Robinson testified that when presented with the latter provision in a policy with a value of under $1,500.00, the customer was offered only the choice between two caskets, both of which were not offered for sale to other customers. Thus, the customer was not allowed to select the casket of his choice, regardless of the specific policy language.
Defendants also argue that, because Plaintiffs contend that the policies are ambiguous, the resulting inquiry into the common intent of the parties to each policy will defeat commonality. Relying primarily on Banks, 737 So.2d 1275, they argue that commonality is lacking because of the extrinsic evidence that will be necessary to show "what was said to whom, when and under what circumstances" for each claim. We disagree. We find that Banks is distinguishable because, as recognized by the supreme court, "the essence" of those plaintiffs' claims was "fraud and misrepresentation" in the selling of life insurance policies. Id. at 1281. Resolution of those claims necessarily depended upon "the circumstances surrounding each purchase by each policyholder ... to determine whether the purchaser relied on representations made either in written documents or by a particular agent[.]" Id. In contrast, the present litigation will require a determination of whether Defendants' uniform treatment of all customers with a Kilpatrick policy comported with the terms of the policy. In Rabenhorst Funeral Home, Inc. v. Tessier, 95-1088 (La.App. 1 Cir. 5/10/96); 674 So.2d 1164, the court acknowledged that the true intent of the parties was at issue if a contract were found to be ambiguous, but the court also recognized that an ambiguity in an insurance contract is to be construed in favor of the insured. In Rabenhorst, the court concluded that the burial policy at issue did not prohibit the substitution of an alternative casket, in part because of the contract's silence on that point. Hence, the many "mini-trials" with confusing extrinsic evidence that Defendants predict are not a foregone conclusion. See also Parry v. Administrators of the Tulane Educ. Fund, 98-2125 (La.App. 4 Cir. 6/30/99); 740 So.2d 210, writ denied, 99-2297 (La.11/12/99); 750 So.2d 197, in which certification was affirmed on behalf of all *1003 university faculty physicians for compensation allegedly owed as the result of improper payment practices, even though each physician's compensation was governed by individual employment contracts.
Typicality
Under Article 591(A)(3), Plaintiffs must show that "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class." In Duhe, 779 So.2d at 1079 (citations omitted), we explained:
This element ... requires that the claims of the class representatives be a cross-section, or typical of, the claims of all class members.... The test for typicality, like commonality, is not demanding. It satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory.
Defendant, Kilpatrick, points to differences in the testimony of the named Plaintiffs to show that their claims are not typical of each other and of the unnamed class members. In particular, Kilpatrick emphasizes that both Plaintiffs' descriptions of the caskets that they were offered differed greatly, although both agreed that they were not offered the casket that Hixson Brothers identified in photographs as the one accompanying their policies. We find that these distinctions, as well as the others cited in brief, do not affect the trial court's conclusion that the Plaintiffs' claims are typical because they "arise[ ] from the same event, practice or course of conduct" as the claims of the other class members. Regardless of the particular casket offered, Defendants do not deny that Kilpatrick policyholders were not allowed to purchase another casket and retain the other benefits of their policies. As found by the trial court, "[A]ll the representatives share with each other and with the absent members the same interests.... All were denied the opportunity to select an alternate casket. Further, all were required to accept the face value of burial insurance policies because they refused to accept the casket provided by the funeral home." We find no error in the conclusion that Plaintiffs have met this requirement.
Adequacy of Representation
Article 591(A)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The test generally applied to determine adequacy of representation requires (1) the absence of conflicting or antagonistic claims between the representatives and the other class members; (2) the representatives' sufficient interest in the outcome to insure vigorous advocacy; and (3) competent, experienced, and qualified counsel. Duhe, 779 So.2d 1070 (citing Davis v. Cash for Payday, Inc., 193 F.R.D. 518 (N.D.Ill.2000)).
Kilpatrick makes no argument concerning competency of counsel, but contends that Mrs. Mathews will not adequately represent the other class members because (1) her claim is not typical in that she was not offered the same casket as Ms. Robbins, (2) she did not make the arrangements for her husband's funeral, but left that to her husband's son, and (3) she admitted that she has not read the petition in the case and was unsure of her status as a plaintiff. We find no error in the finding of adequate representation. We have already discussed why Kilpatrick's typicality argument fails. Further, the record reflects that Mrs. Mathews did participate in the arrangements for her husband's funeral, and her testimony that she filed suit "so that this will never happen to anybody else" indicates her commitment to vigorously pursuing the litigation *1004 on behalf of herself and the other members of the class.
Class Definition
Article 591(A)(5) provides:
The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
The trial court retains the flexibility to modify the class as needed during discovery or trial, as evidenced by the language "is or may be defined ...." (Emphasis added.) Duhe, 779 So.2d 1070. "[B]ecause of a trial court's authority to redefine the class before a decision on the merits, appellate courts often allow certification despite a finding that the definition is inadequate for one reason or another." Id. at 1080.
Kilpatrick argues that the class definition will result in conflict among class members based upon their status as either "beneficiaries and/or heirs" and that it is overly-broad because it includes those customers who found the offered casket acceptable. Defendants also argue, as previously discussed, that the dates by which the trial court defined the class include many claims that have prescribed. Because the trial court retains authority to redefine the class at any time prior to judgment on the merits, we find that the question of prescribed claims can be addressed on remand, should it arise in the future course of litigation.
Predominance and Superiority
In addition to the requirements of paragraph (A), Article 591 mandates that the court make one of four additional findings. Pertinent to this case is paragraph (B)(3), which requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." That paragraph then lists six factors pertinent to those findings:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation[.]
The requirement that there be a "common character" among the representatives and the absent class members "restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Duhe, 779 So.2d at 1081 (quoting McCastle, 456 So.2d at 616). Further, "if the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual *1005 fairness would be better served by some other procedural device." Id.
Plaintiffs filed suit for breach of contract. They alleged that Defendants failed to honor certain burial insurance policies by requiring Plaintiffs to forfeit all benefits of their contracts, except a "store credit," if they chose to substitute a casket for the one that was offered. Defendants have not disputed that all Central State policyholders were treated in the same manner in that they were not given the full benefits of the policy if they chose to purchase a casket that was not offered to them. Defendants apparently treated all Central State customers in this manner, regardless of the specific provisions in the policy presented to them. Thus, the differences in the individual policies are not as significant as Defendants suggest, given this uniform course of conduct.
Turning to the six factors in Article 591(B)(3), we find that the final three support certification. Nothing in the record suggests that this litigation will be unmanageable. Contrary to Defendants arguments, the individual claims appear relatively small,[2] and it seems unlikely that the class members will prosecute individual actions, either from their lack of knowledge of their rights or from the type of insurance involved. For these reasons, we find no error in the trial court's findings of predominance and superiority.

Decree
For the above reasons, the judgment of the trial court granting Plaintiffs' motion to certify is affirmed and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Defendants-Appellants.
AFFIRMED AND REMANDED.
NOTES
[1] Article 591 in its entirety provides:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
[2] Hixson Brothers argues that by demanding a jury trial, Plaintiffs are admitting that each individual claim exceeds $50,000.00. However, as the supreme court recognized in In re Gas Water Heater Products Liability Action, 97-2028, p. 3 (La.4/14/98); 711 So.2d 264, 266, "A class action is one suit with one judgment. The class is one entity represented by the named plaintiffs."