# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-1065

**DOROTHY MATHEWS, ET AL.**

**VERSUS**

**HIXSON BROTHERS, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NUMBER 196,044
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### BILLIE COLOMBARO WOODARD
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and Arthur J. Planchard,[*] Judges.

**REVERSED AND REMANDED.**

Linda Suzanna Harang
Law Offices of Linda S. Harang
5817 Citrus Boulevard, Suite H
Jefferson, Louisiana 70123
(504) 734-2486
Counsel for Plaintiffs/Appellants:
    Dorothy L. Mathews
    Susan Robbins

Stephen Barnett Murray
Robert John Diliberto
Murray Law Firm
909 Poydras Street, Suite 2550
New Orleans, Louisiana 70112
(504) 525-8100
Counsel for Plaintiffs/Appellants:
    Dorothy L. Mathews
    Susan Robbins

Russell L. Potter
Andrew P. Texada
Stafford, Stewart, & Potter
Post Office Box 1711
Alexandria, Louisiana 71309
(318) 487-4910
Counsel for Defendants/Appellees:
    Hixson Brothers, Inc.
    Hixson Brothers Funeral Home

Susie Morgan
Mark L. Hornsby
M. Allyn Stroud
Wiener, Weiss, & Madison
Post Office Box 21990
Shreveport, Louisiana 71120-1990
(318) 226-9100
Counsel for Defendant/Appellee:
    Kilpatrick Life Ins. Co.

---

[*]Judge Arthur J. Planchard, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

WOODARD, Judge.

The Plaintiffs appeal the trial court's ruling to decertify the class in this action. We reverse the trial court's judgment and remand for further proceedings.

* * * * *

This dispute concerns whether a class action is the proper procedural method for adjudicating the Plaintiffs' claims. The underlying claims involve burial insurance policies that Central State Life Insurance Company (Central State) issued which designated a Hixson Brothers Funeral Home as the provider of funeral benefits. These policies provide that Hixson Brothers Funeral Home will furnish certain funeral benefits, including a casket, when the policyholder dies. Plaintiff, Ms. Dorothy L. Mathews, alleges that Hixson refused to furnish these benefits when her husband, Mr. Joe Mathews, a holder of one of the described policies, died.

When her husband passed away, Ms. Mathews and her son, Joe, Jr., presented Hixson with the policy. When Hixson showed her the press board box that it provided under the policy, she found it to be completely unacceptable. When she refused to accept the particular casket, Hixson informed her that she had to accept it in order to receive the other benefits listed in the policy, such as embalming, a funeral coach, use of the funeral home, and necessary cemetery equipment. Hixson would not allow her to purchase another casket at retail price without forfeiting all of the benefits in the policy. Rather than allowing her to buy another casket and substitute it under the policy, Hixson required her to pay for the casket *as well as* current retail costs for the additional services which were supposed to have been provided under the policy. They simply gave her a credit of $1,000.00, the face value of the policy, against the total amount of the funeral bill. Accordingly, Ms. Mathews spent $6,299.00 on burial products and services and received a $1,000.00 credit against this amount with Hixson.

Consequently, she instituted an action for breach of contract against Hixson Brothers Funeral Home, Hixson Brothers, Inc. (collectively Hixson) and the insurance company that has assumed Central State's burial policies, Kilpatrick Life Insurance Company (Kilpatrick). She, also, sought to certify a class of similarly situated Plaintiffs; namely, other beneficiaries or heirs who purchased a Central State (now

1

Kilpatrick) or Hixson policy and made funeral arrangements under that policy at any of Hixson's funeral homes.

Subsequently, Ms. Susan Robbins joined as a Plaintiff in the action because when Ms. Robbins made her grandmother's funeral arrangements at Hixson, she, too, found the casket that Hixson provided under her grandmother's policy unacceptable. Ms. Robbins offered to accept the particular casket and donate it or dispose of it in order to receive the other benefits of the policy and to purchase another casket in which to bury her grandmother. However, Hixson informed her she must, either, bury her grandmother in the proffered casket or accept a credit for the face value of the policy and apply it against her outright purchase of another casket and those services which, otherwise, would have been provided under the policy.

Thus, Ms. Matthews sought to certify a class of persons like herself and Ms. Robbins who had made funeral arrangements for a loved one at a Hixson Funeral Home under a Kilpatrick or Hixson policy. Recognizing that contract claims prescribe after ten years, she limited the class to those who made funeral arrangements from May 26, 1989, ten years before the date that Ms. Mathews filed her action, until the date of class certification.

The policies involved are not exactly the same; however, they all include a casket as part of the funeral benefits. Hixson admits that only one casket was offered on those policies which had a face value of $1,500.00 or less, and for policies with a greater face value amount, they offered a different casket. Specifically, Plaintiffs allege that "in servicing these burial policies, Hixson unilaterally decided that two types of press board caskets (i.e. particle board) were the only caskets that would be provided under the terms of the policies in question." They are identified as Models 200 and 250. "The Model 200 is a cloth-covered particle board, i.e. press board box. It is furnished to policyholders with a policy having a face value of less than $1500. The Model 250 is also a cloth-covered particle board, i.e. press board box, with a slightly different contour. It is furnished to those whose policies have a face value of more than $1500." "They were not kept on display in the casket showroom" but, instead, one of them was "rolled out of a utility (broom) closet into the showroom."

The maker of the policies did not specify the type of casket the funeral benefit included to put potential purchasers on notice that it was, in fact, a pressboard casket. Certain policies provided for a "casket - (selected by family)." In these instances,

2

Hixson gave the family a choice between these same two caskets, neither of which they displayed in their showroom or offered for sale to the general public. Furthermore, Hixson admits that its regular practice was to prohibit any casket substitutions under these policies and to give, only, a credit in the amount of the policy towards the purchase of any other casket and the purchase of the other goods and services which, otherwise, would have been provided under the policy at no cost.

Because some of these policies contained a term limiting the right to sue on the policy to two years after the insured's death, the Defendants asserted that many of the class members had lost their rights to bring an action. Consequently, they argued that the class was not so numerous that it required class action treatment. The trial court responded with a finding that any policy term, limiting the time period for bringing an action, was null and void. Furthermore, it found that the action met all of the prerequisites for class certification. Consequently, the Defendants appealed that ruling.

A panel of this court reversed the trial court's ruling that the burial policies' time limit provisions were null and void but found that this reversal did not automatically make certification inappropriate.[1] Rather, this court acknowledged that under La.Civ.Code art. 591(A)(3)(c), the trial court would have the power to enlarge or restrict the class, amend or reverse certification at any time.[2]

Subsequently, the Defendants urged the trial court to decertify the class, asserting that this court's ruling on the time limit provisions effected such a dramatic decrease in class members that the Plaintiffs no longer met the numerosity prerequisite. They, also, argued that the class definition was overly broad because it included members who were not necessarily aggrieved or harmed by the Defendants' conduct; under an appropriately revised definition, the Plaintiffs did not meet their burden to prove the numerosity prerequisite; and no additional claimants coming forward since the certification hearing indicated that it is unlikely that a sufficient number of Plaintiffs will file suit to make joinder impracticable; thus, a class action was no longer a superior method of adjudication.

---

[1] *Mathews v. Hixson Bros., Inc.*, 02-124 (La.App. 3 Cir. 7/31/02), 831 So.2d 995, *writs denied*, 02-2286, 02-2305 (La. 12/13/02), 831 So.2d 984.

[2] *Id.*

The trial court agreed with the Defendants and granted their motion to recall class certification. The Plaintiffs have appealed. Therefore, we must review the trial court's decision to decertify.

* * * * *

STANDARD OF REVIEW

Certification determination requires an analysis of the particular facts and circumstances of each case and the trial court has broad discretion in deciding whether to certify a class.[3] Moreover, it has discretion to amend or reverse its decision at any time.[4] We may not disturb its decision unless it is manifestly erroneous.[5] Notwithstanding, we must recognize that "[t]he recent jurisprudential trend is to require the trial court to grant certification when the elements have been satisfied."[6] This trend is consistent with our supreme court's statement in *McCastle v. Rollins Environmental Services of Louisiana, Inc.*: "if there is to be an error made, it should be in favor and not against the maintenance of the class action."[7]

CLASS ACTION PREREQUISITES

One or more persons can sue and represent a class of other similarly situated persons, only, if prerequisites are met under La.Code Civ.P. art. 591(A).[8] First, the class must be so numerous that joinder of all members as individual named parties is "impracticable" (numerosity). This prerequisite requires an examination of the specific facts of each case and imposes no absolute limitations.[9] The Plaintiffs must,

---

[3]*Martello v. City of Ferriday*, 01-1240 (La.App. 3 Cir. 3/6/02), 813 So.2d 467, *writs denied*, 02-1002, 02-990, 02-1514 (La. 6/7/02), 818 So.2d 769, 770, 771.

[4]La.Code Civ.P. art. 592(A)(3)(c).

[5]*Martello*, 813 So.2d 467.

[6]*Boudreaux v. State, DOTD*, 96-137, p. 14 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 124 (citing *Dumas v. Angus Chem. Co.*, 25,632 (La.App. 2 Cir. 3/30/94), 635 So.2d 446.)

[7]456 So.2d 612, 620 (La.1984).

[8]La.Code Civ.P. art. 591.

[9]La.Code Civ.P. art. 591(A)(1).

4

also, show that there are questions of law or fact common to the class (commonality).[10] The third factor, typicality, requires the representatives' claims or defenses to be typical of those of the class as a whole such that, in representing their own interest, they represent the interest of the class members (typicality).[11] Another factor, adequacy of representation, ensures that the named representative(s) will fairly and adequately represent the class.[12] Interpreting the federal class action rule, upon which La.Code Civ.P. art. 591 is based,[13] the U.S. Supreme court has found that both commonality and typicality "merge [and] serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence."[14] Finally, there must be an objectively definable class.[15]

In addition to these prerequisites under La.Code Civ.P. art. 591(A), the action must fit into at least one of the categories listed in La.Code Civ.P. art. 591(B). The relevant category in the instant action is section (B)(3), requiring that common questions of law or fact predominate over questions that would be specific to each individual and that a class action is a superior adjudicatory method.

The trial court recalled certification in the instant case based on its finding that numerosity was no longer met and that a class action was no longer a superior method of adjudicating the Plaintiffs' claims. We examine its decision in light of these particular factors.

**NUMEROSITY**

---

[10]La.Code Civ.P. art. 591(A)(2).

[11]La.Code Civ.P. art. 591(A)(3).

[12]La.Code Civ.P. art. 591(A)(4).

[13]*Clark v. Trus Jois MacMillian*, 02-676 (La.App. 3 Cir. 12/27/02), 836 So.2d 454, *writ denied*, 03-275 (La. 4/21/03), 841 So.2d 793.

[14]*General Tel. Co. of the S.W. v. Falcon*, 457 US 147, 157 n.13, 102 S.Ct. 2364, 2370 (1982).

[15]La.Code Civ.P. art. 591(A)(5).

5

The Plaintiffs presented evidence that between May 1989 and January 2000, Kilpatrick made 2,464 payments to Hixson for Central State Policies and it made 2,142 other payments to Hixson but was unable to cross-reference them to specific policies. The trial court found that even a small percentage of this total—4,606—"foreshadow[s] the probability that numerous individual suits would or may be filed if the class certification were denied." However, this court's ruling that the two-year prescriptive terms of some of the policies is permissible decreases the number of potential claimants. For example, a large percentage of the sample policies in the record are subject to a two-year prescriptive period and, therefore, have prescribed.

Nonetheless, Mr. Bruce Robinson, vice president and general manager of Hixson Brothers, estimated that in 1999, Hixson provided 200 funerals under Kilpatrick policies. Furthermore, the record indicates that from May 1997 to January 2000, there were 889 instances in which Kilpatrick made payments to Hixson under a Central State policy, corroborating Mr. Robinson's estimation. None of these instances would be affected by the restrictive prescriptive terms. Accordingly, this court affirmed certification in its prior decision on this case despite its ruling concerning the prescriptive terms, finding that "a significant number of policyholders would still be affected by this suit."[16] Thus, the decision that the prescriptive periods may be enforced, alone, does not justify decertification.

Notwithstanding, the trial court also reconsidered its class definition in its previous certification judgment. It had defined the class as follows:

> Every private or juridical person (including, but not limited to natural persons, corporations, partnerships, trusts, limited liability corporations, joint ventures, estates, guardians, tutors, etc.):
>
> 1) Who is a beneficiary and/or heir of all known insured persons who purchased burial insurance policies that were issued by Central State Life Insurance Company or Hixson Life Insurance Company; and
>
> 2) Who, upon the death of the insured, made arrangements for the burial of the named insured at a funeral home located in the State of Louisiana and owned by Hixson Brothers, Inc., between May 26, 1989 through September 26, 2001.

---

[16]*Mathews*, 831 So.2d at 1001.

However, in reconsidering this definition, the trial court agreed with the Defendants that "those who were not dissatisfied with the proffered casket or did not request a substitution are not aggrieved and should not be considered as part of the class." It stated further:

> Plaintiffs have not offered evidence of whether such a definable group of aggrieved persons exist. The fact that approximately 200 policies were issued each year for the 2-year period at issue does not establish that there is a definable group of aggrieved persons whose joinder is impracticable.

We cannot agree with the trial court's reasoning here. First, the period at issue is a four-year period. Even under policies containing a two-year prescriptive period, the class would extend to those persons who buried their loved ones from May 26, 1997 to September 26, 2001. Furthermore, the record indicates that there were 889 instances in which Central State made payments to Hixson from May 1997 to January 2000. Additionally, the class would still include some members who buried their loved ones as long ago as 1989 because some of the policies, albeit a small percentage, do not contain the two-year prescriptive period.

Moreover, while the trial court's recognition that its class definition may have been overly broad may justify an amendment to the definition, we do not find that it justifies a measure as drastic as decertification. Specifically, Mr. Robinson, vice president and general manager of Hixson Brothers, stated that a very small amount of those who presented Hixson with one of the described policies actually used the casket that Hixson offered. This indicates that most were not satisfied with the casket. Thus, we find that the Plaintiffs have, in fact, offered sufficient proof that a definable group of aggrieved persons exists. Further, even a conservative approximation of the number of persons in this group sufficiently satisfies the numerosity requirement. Accordingly, we find no justification for class decertification on this basis.

**PREDOMINANCE AND SUPERIORITY**

The trial court gave two additional reasons for decertifying the class, both of which involve La.Code Civ.P. art. 591(B)(3)'s requirement that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy." The Article lists six factors to guide in this determination:

> (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
>
> (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (c) The desirability or undesirability of concentrating the litigation in the particular forum;
>
> (d) The difficulties likely to be encountered in the management of a class action;
>
> (e) The practical ability of individual class members to pursue their claims without class certification;
>
> (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

First, the trial court considered that no additional claimants had come forward since the certification hearing. It recognized that "judicial efficiency means consideration of the existence of, or likelihood or improbability of future similar suits," and found that "the Court does not anticipate the filing of numerous suits in the case *sub judice*." However, as it previously recognized in its certification judgment, "It is probable, if not a certainty, that numerous members of the proposed class are unaware of their rights and, therefore, unlikely to file suit to vindicate said rights."

We see no evidence in the record that discounts the trial court's earlier finding in any way. In fact, no new discovery or evidence was offered between the certification and the hearing to decertify. Thus, the only new consideration before the trial court was this court's opinion, which reinforced the trial court's conclusions concerning La.Code Civ.P. art. 591(B)(3). This court agreed that three factors under section (B)(3) supported certification. Specifically, we said, "Nothing in the record suggests that this litigation will be unmanageable. Contrary to Defendants' arguments, the individual claims appear relatively small, and it seems unlikely that the class members will prosecute individual actions, either from their lack of knowledge

or of their rights or from the type of insurance involved."[17] Accordingly, the fact that no additional claimants have come forward actually supports, rather than undermines, certification of a class in this action, particularly under sections (e) and (f). Moreover, judicial efficiency is but one of the factors to consider in determining whether a class action is a superior method of adjudication.

Lastly, the trial court found that procedural superiority of a class action may be further undermined if parol evidence becomes necessary to determine individual intent. However, again, in its certification judgment, it adequately addressed this concern, stating:

> [T]he Defendants have not suggested that they have ever issued a burial insurance policy that permits one to select an alternate casket without negating the insurance policy. In the absence of any demonstration that the Defendants have issued an insurance policy that does permit an alternative casket selection, it follows an "individual-by-individual, contract-by-contract" determination will not be a dispositive factor in this case.

Again, this court affirmed the trial court's reasoning, stating:

> Defendants have not disputed that all Central State policyholders were treated in the same manner in that they were not given the full benefits of the policy if they chose to purchase a casket that was not offered to them. Defendants apparently treated all Central State customers in this manner, regardless of the specific provisions in the policy presented to them. Thus, the differences in the individual policies are not as significant as Defendants suggest, given this uniform course of conduct.[18]

As the parties offered no new evidence and conducted no new discovery after the trial court and this court made the above statements, we find no reasonable basis for it to have reached an opposite conclusion at this juncture.

Accordingly, after reviewing the reasons for its decision, we believe that decertification was premature.

---

[17]*Id* at 1005.

[18]*Id*. at 1005.

## CONCLUSION

The Plaintiffs appeal the trial court's decision to recall its prior class certification. We find that the trial court erred in decertifying the class and, therefore, reverse its judgment and remand for further proceedings. We assign the costs of this appeal to Defendants/Appellees.

**REVERSED AND REMANDED.**