# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1582


**BETTY SMITH**

**VERSUS**

**WAL-MART STORES, INC., D/B/A WAL-MART SUPERCENTER**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 70329, DIV. B
HONORABLE FRED C. SEXTON, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Donald G. Kelly**
**William L. Townsend, III**
**Kelly, Townsend & Thomas**
**Post Office Box 756**
**Natchitoches, LA   71458-0756**
**(318) 352-2353**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Betty Smith**

**Robert L. Salim**
**Post Office Box 2069**
**Natchitoches, LA 71457-2069**
**(318) 352-5999**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Betty Smith**

**Ronald E. Corkern, Jr.**
**Corkern & Crews, L.L.C.**
**Post Office Box 1036**
**Natchitoches, LA   71458-1036**
**(318) 352-9809**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Wal-Mart Stores, Inc.**

**Kathleen A. Manning**
**Henri Wolbrette,  III**
**Stephen P. Beiser**
**McGlinchey Stafford, PLLC**
**Post Office Box 60643**
**New Orleans, LA   70160-0643**
**(504) 586-1200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Wal-Mart Stores, Inc.**

**John G. Swift**
**Swift & Rhoades, L.L.P.**
**Post Office Box 53107**
**Lafayette, LA   70505-3107**
**(337) 572-9877**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Wal-Mart Stores, Inc.**

AMY, Judge.

The plaintiffs filed individual suits against the defendant after a surveillance camera was discovered in the restroom of the defendant's store in Natchitoches. The plaintiffs subsequently sought certification of a class action. The defendant objected, asserting that resolution by class action was not the superior method of adjudicating the matter. The trial court granted the motion to certify class. The defendant appeals the class certification. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that, on July 9, 1997, Natchitoches police officers responded to a complaint at the Natchitoches Wal-Mart Supercenter after a customer reported finding a camera located in the ceiling of the women's restroom at the rear of the store. According to the police report, the officer entered the restroom, there locating the camera which had been pulled from its position by the customer's husband. The officer explained in the incident report: "I entered the restroom and observed a small video camera, that appeared fully functional, hanging from some wires in the stall (#3). Mr. Parker showed me where the camera was located, before it was pulled down, and it appeared to be placed in such a manner as to observe women as they used the restrooms [sic] toilet." The report continues, stating that the store manager "showed me the path of the cable, which led to the [] surveillance room, but was unconnected to a working monitor."

Wal-Mart denied knowledge or approval of the camera, stating the placement of such a camera in the restroom is impermissible and that such placement would not be in the course and scope of an employee's duties. An August 20, 1997 statement from James McCorkle, a Wal-Mart assistant manager, is contained in the police report. It indicates that he was working at the store in the early morning hours of July

7, 1997 and that, in response to thefts taking place in the bathroom, he began placing a camera in the restroom. The statement indicates that he did not complete the task.

Wal-Mart also submitted an affidavit from Mr. McCorkle, who stated that he "placed a handheld video camera in the ceiling of the lady's restroom on or about July 5 or 6, 1997." He stated that the video camera was used on only two occasions; a recording made on July 5th or 6th, but which produced a tape that was unfocused and could not be observed; and a recording made on July 6th or 7th. He stated that he never reviewed this latter tape.

Mr. McCorkle explained that since this original camera operated from a battery only, he decided to install a surveillance camera, and began doing so on the morning of July 7th. Mr. McCorkle stated: "I was unable to complete this job of hooking up the cable to the camera and to the video monitor in the security room because I had too much to do on the sales floor to get the store ready for the next day's business, and to get ready for inventory." He stated that he did not return to work until July 9th, by which time the camera had been discovered. He stated that: "The only actual surveillance that ever occurred was the two occasions between July 5 and July 7, 1997, when I attempted to use the handheld video camera which I had installed in the ceiling of the women's restroom." Mr. McCorkle stated that the placement of the surveillance devices was done without Wal-Mart approval and that "no other Wal-Mart employee or associate had any knowledge of my efforts to conduct surveillance of the lady's restroom[.]" The affidavit indicates that after Mr. McCorkle apprized Wal-Mart of the installation of the camera, his employment was terminated.

2

Subsequent to the discovery of the camera, Betty Smith, Janice Perry, and Jenny Bloodworth,[1] filed individual suits. The petitions allege the discovery of the camera, that the camera was situated in a position so "as to observe women as they used the restroom toilet; there was a transmission cable that lead from the small video camera situated and located in said restroom to a surveillance room into a working monitor." The petitions allege that actions on behalf of Wal-Mart and their employees "was obviously done with the knowledge and consent of the supervisors and as such, the doctrine of respondeat superior should apply herein." The petitions sought damages related to "invasion of privacy or attempted invasion of privacy[.]"

Ms. Bloodworth filed a Motion to Certify Class Action in her matter in November 1998. Before the matter was ruled upon, however, and on motion of Wal-Mart, the separate suits were consolidated in December 1998.[2] The issue of class certification was considered over several hearing dates, with the trial court considering separately the temporal and geographic parameters of the class. The trial court ultimately certified the class, signing the judgment in February 2003. The judgment established the parameters as follows:

> IT IS FURTHER ORDERED that the Court defines the members of the class to be all female, non-Wal-Mart employees, resident within a 40-mile radius from the corner of Front and Church Streets in Natchitoches, Louisiana, who were living in one of the six Parishes of Sabine, Rapides, Winn, Grant, Red River, and Natchitoches between and including the dates of November 16, 1996,[3] through the discovery of the camera on July 9, 1997, and who can establish presence in the

---

[1]The record indicates that suit was initially filed by a fourth individual, but that the suit was dismissed.

[2]For decretal information on the companion cases, *see Perry v. Wal-Mart Stores, Inc.*, 03-1583 (La.App. 3 Cir. _/_/04), _ So.2d _ and *Bloodworth v. Wal-Mart Stores, Inc.*, 03-1584 (La.App. 3 Cir. _/_/04), _ So.2d _.

[3]Although Mr. McCorkle's affidavit related to activities in July 1997, a videotape recording of the women's restroom was entered into evidence which bears a digital date stamp of November 16 and 17, 1996.

customers' ladies restroom at the rear of the Wal-Mart store in Natchitoches, Louisiana, during that period:

IT IS FURTHER ORDERED that to qualify as a member of the defined class, each claimant must prove her presence in the Wal-Mart ladies' restroom during the period November 16, 1996, to July 9, 1997, in one of the following two ways:

1)    By store receipt, credit card receipt, or canceled check to Wal-Mart dated during the relevant time period, along with the claimant's affidavit confirming that the receipt or other acceptable proof is, in fact, her own, [sic] receipt or other proof and stating that she was in the restroom in question on that date; or

2)    Alternatively, by a personal affidavit, supported by two corroborating affidavits, attesting that the claimant was in the store, and in the particular restroom, on a date during the relevant time period.  If this method of proof is elected, the Court may hold hearings to allow cross-examination of the affiants before qualifying the potential claimant as a member of the class.

IT IS FURTHER ORDERED that plaintiffs Jenny Bloodworth, Janice Perry, and Betty Smith be and they are hereby named as representatives of the class certified in this Judgment.

IT IS FURTHER ORDERED that plaintiffs' counsel, Kelly, Townsend & Thomas and Robert L. Salim, be and they are hereby certified as counsel for the class.

IT IS FURTHER HEREBY ORDERED that the parties submit to the Court within 45 days of the signing of this Judgment a proposed plan for notice to members of the class, agreed upon by all parties, and that no notice to the public in general shall be issued by any party prior to the Court's approval of the method of notice.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Judgment is an interlocutory Judgment which the Court finds may cause irreparable injury, all in accordance with La.C.C.P. Art. 2083.

Wal-Mart filed a motion for new trial, asserting, among other things, that a bellwether trial should be conducted in order to establish the class parameters.  Wal-Mart claimed that the bellwether trial method would permit the merits of the claim to be heard, the facts of the underlying case established, and class notice then sent to

4

only those who were affected by any tortious conduct. The trial court denied the motion for new trial.

Wal-Mart appeals the certification asserting that the plaintiffs failed to establish the existence of a class so numerous as to require certification and that factors indicate that a class action is not the superior method for adjudication of the matter. Wal-Mart asks this court to decertify the class and remand the matter for individual trials.

**Discussion**

The Louisiana Code of Civil Procedure provides for class actions, setting forth guidelines for class certification in Articles 591 through 597. Central to this matter is Article 591, which contains the prerequisites for class certification and provides:

> A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of law or fact common to the class.
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (4) The representative parties will fairly and adequately protect the interests of the class.
>
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
>
> B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
>
> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
>
> (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

5

(b)     Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2)     The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3)     The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to these findings include:

(a)     The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b)     The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c)     The desirability or undesirability of concentrating the litigation in the particular forum;

(d)     The difficulties likely to be encountered in the management of a class action;

(e)     The practical ability of individual class members to pursue their claims without class certification;

(f)     The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or

(4)     The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

C.     Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class.  However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.

The party seeking the class certification bears the burden of establishing the above

criteria. *Duhe' v. Texaco, Inc.*, 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, *writ*

6

*denied*, 01-0637 (La. 4/27/01), 791 So.2d 637. A trial court's determination as to certification is reviewed under the abuse of discretion standard of review. *Banks v. New York Life Ins. Co.*, 98-0551 (La. 7/2/99), 737 So.2d 1275, *cert. denied*, 528 U.S. 1158, 120 S.Ct. 1168 (2000); *See also Duhe'*, 779 So.2d 1070.

*Numerosity*

Wal-Mart asserts that the prerequisite of numerosity of the class prohibits certification of the class in this case. It argues that, although the putative class may be large given the temporal and geographical parameters set forth by the trial court, few of that substantial number will be able to demonstrate that they are part of the class. Wal-Mart asserts that, although the trial court set the temporal limits of the class as between mid-November 1996 and July 9, 1997, the physical evidence does not support the allegation that a camera was in place for that length of time. Instead, Wal-Mart asserts in its brief that "the video recording that allegedly caused the injury took place, at most, over two days and produced a single tape that recorded nine persons during a 30-minute period."

With regard to numerosity, one of the elements discussed in Article 591(A)(1), jurisprudence on the issue indicates that the numerosity element entails a determination as to whether the parties are so numerous as to indicate that individual suits would burden the courts. *West v. G&H Seed Co.*, 01-1453 (La.App. 3 Cir. 8/28/02), 832 So.2d 274. There is no particular number of plaintiffs that renders a matter appropriate as a class action. *Mathews v. Hixson Bros., Inc.*, 02-124 (La.App. 3 Cir. 7/31/02), 831 So.2d 995, (quoting *Johnson v. Orleans Parish Sch. Bd.*, 00-825 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, *writs denied*, 01-2215 (La. 11/9/01), 801 So.2d 379, 01-2216, 01-2225 (La. 11/9/01), 801 So.2d 378), *writ denied*, 02-2305 (La. 12/13/02), 831 So.2d 984. Rather, difficulty in identifying those who may be

7

claimants is a factor in whether joinder of all potential plaintiffs is impracticable, making a class action appropriate. *Id.* Furthermore, although the claimants as a group must be definable, identification of every member of the potential class prior to certification is not required. *West*, 832 So.2d 274.

Our review of the record reveals support for the determination that "the class is so numerous that joinder of all members is impracticable" as is required by Article 591(A)(1). The evidence includes a videotape bearing the digital date imprint of November 17-18, 1996. As observed by the trial court, the tape reveals the recording of several women in the restroom stall. The evidence introduced also indicates the July 9, 1997 discovery of a camera in the restroom at Wal-Mart, and although not connected to a monitor, lines linked the camera to the surveillance room. Thus, the trial court did not err in establishing the temporal limits as between "November 16, 1996,[4] through the discovery of the camera on July 9, 1997."

Although Wal-Mart argues that the digital date on the videotape is incorrect, subject to manipulation, or contrary to the affidavits/statements of Mr. McCorkle, these determinations are ones relating to the merits. Further evidence may be explored by the parties and any necessary credibility determinations made. While Wal-Mart contends in its brief that eight months of viewing/taping without discovery "is contrary to practical logic," this type of factual determination is a question related to

---

[4]Wal-Mart points out that the trial court included within the class, customers between November 16, 1996 through February 9, 1997, while the videotape contains November 17 - 18 taping dates. We cannot determine from the record whether the trial court intentionally established the beginning of the time period on the date prior to that shown on the tape. However, we do not disturb the temporal limits of the class, noting that La.Code Civ.P. art. 592(A)(3)(c) provides for the trial court to redefine the limits of the class as needed, providing:

> In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.

the merits. Those determinations regarding the merits of the cause of action are inappropriate on class certification. *West*, 832 So.2d 274. In considering the appropriateness of class certification, the trial court is not to consider whether a cause of action has been successfully alleged or whether the plaintiffs will prevail on the merits. *Id.*, *quoting Andry v. Murphy Oil, U.S.A., Inc.*, 97-0793 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, *writ denied*, 98-1158 (La. 6/19/98), 720 So.2d 1213, *writ denied*, 98-1178 (La. 6/19/98), 720 So.2d 1214.

Wal-Mart further argues that Louisiana does not recognize a cause of action for attempted invasion of privacy as pled by the plaintiffs' petition and therefore, only "persons who were actually recorded by the video camera in the restroom" have a cause of action. This, Wal-Mart contends, "greatly limits the numerosity of the class because the evidence shows only nine persons who actually were recorded."

Although the videotape entered into evidence does not, alone, reveal the viewing of a large number of women in the restroom, it in no way limits what may be presented at a trial on the merits. It is unwarranted to draw from the evidence presented at the certification hearing, a conclusion that the evidence presented is the entirety of all the evidence that exists. That determination is properly left for the merits.

This assignment lacks merit.

*Superior Method of Adjudication*

In its second assignment of error, Wal-Mart asserts that the trial court improperly considered the matter under La.Code Civ.P. art. 591(B)(3), that portion of Article 591 requiring consideration of whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Wal-Mart argues that the individuals allegedly affected "have no knowledge that their privacy may have been invaded and, therefore, they have sustained no emotional harm. The class notification, itself, will supply the final element of their tort, emotional injury caused by learning that they may have used the restroom at a time when the video camera was operating." Wal-Mart continues, asserting that any damages sustained may then be non-recoverable by a large number of the class given the task of proving class membership, *i.e.*, producing evidence indicating their presence in the restroom seven years ago.

We find no merit in Wal-Mart's reasoning in this regard. First, we find no evidence in the record indicating to what extent discovery of the camera was known in the community. Obviously the plaintiffs filing the underlying petitions were aware of the discovery. While true that not all potential members of the class may have that knowledge, the trial court was not required to base its actions on keeping confidential those allegations of the petition, allegations which would ultimately come to light during the proceeding of individual suits. This argument lacks merit.

Wal-Mart also questions the certification under Article 591(B)(3)(d) and (f). Article 592(B)(3)(d) and (f) indicate that, in determining whether a class action is the superior method of adjudication, the trial court is to consider:

> (d)    The difficulties likely to be encountered in the management of the class action;

10

. . . .

> (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

Wal-Mart contends that "[b]ecause the class as certified includes women and girls who were in Wal-Mart during an eight-month period, the process of establishing class membership will require great expenditures of time, by both court and counsel." Wal-Mart contends that this outlay of resources competes against the possibility that evidence will demonstrate that the camera was only in operation over a two-day period.

Again, the merits of the case are not to be fully litigated at the time of certification. Evidence presented supports the parameters of the class. Reference to the trial court's reasoning in granting the class certification reveals an awareness and consideration of the realities of pursuing this matter as a class action.[5] The burden of establishing entitlement to the class was placed on the purported class members. While the defendant will be faced with having to defend each purported class

---

[5] The trial court stated, in part:

> I think one of the bigger problems, and obviously not everybody in the trade area can be surmised to have been in this Wal-Mart during this period of time, uh, but, and have gone to this particular ladies bathroom but, that highlights my biggest concern about certification of the class and that was proof of the class and, and how you limit it, well that's not the right word, and the uh, the problems of potential fraudulent claims. To me that was, that was the biggest problem I had in certifying the class. And sorting through that, uh, these claims I can easily see will be a difficult and time consuming process for the attorney's [sic] but particularly for the Court. Uh, and I would hope that we would not have to have a special master involved in it, but I can see that it could get to the point where we would. . . . I would hope to retain control over it myself, uh, of course we would if there was a special master, but hope to . . . continue to have direct control over the matter, uh rather than through an intermediary and that's been the biggest bone of contention as far as I'm concerned from the defendants is the question of security of the class, uh, and fraudulent claims . . . there is some potential there and I, I decided that uh, that problem was outweighed by the fact that this was the best way for people who were offended to have their claim presented in the Court because I didn't think that their damages were that significant.

member's entitlement to recover as a class member, similar costs would also have to be pursued if each purported class member sought to pursue any rights through individual suits. In short, we find no error in the trial court's appreciation of the factors at issue in its determination as to whether a class action was the superior method of adjudication in this matter.

*Bellwether Trial*

Finally, Wal-Mart asks that, in the event class certification is appropriate, this court limit the class to those individuals who can establish that "they were in the restroom on July 5, 6, or 7, 1997, or November 17 and 18, 1996." Wal-Mart requests that, upon certification of this smaller class, a bellwether trial be conducted to determine the duration of the "videotaping and the issue of liability, prior to class notice and the proceedings that will be required for the claimants to establish class membership and individual damages."

As stated above, we find no abuse of discretion in the certification of the class nor do we find error in the trial court's determination as to the parameters of the class. Pursuant to La.Code Civ.P. art. 592(A)(3)(c), the trial court retains the discretion to shape the class as is necessary as the evidence presented dictates. Furthermore, as is evident by reference to the judgment certifying the class, the trial court retains control over the timing and content of the notice.

Having reviewed the record, the trial court's conclusions, and the applicable law, we find no abuse of discretion in the determination to certify the class.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the appellant, Wal-Mart Stores, Inc. d/b/a Wal-Mart Supercenter.

**AFFIRMED.**